Patsy Wille, Plaintiff-Appellee, v. Farmers Equitable Insurance Company, Defendant-Appellee, and Main Mutual Insurance Company of Illinois, Defendant-Appellant.

Gen. No. 67–53.

Third District.

December 6, 1967.

Sidney S. Deutsch, of Rock Island, for appellant.

Eagle & Eagle, of Rock Island, and Bozeman, Neighbour, Patton & Henss, of Moline, for appellee.

HOFFMAN, J.

The plaintiff in this case, in a separate action, obtained a judgment against one Carl Fisher, defendant in the separate action and not a party to this cause, for injuries which she incurred when her automobile was struck by one driven by Fisher. Plaintiff's automobile was insured by defendant, Farmers Equitable Insurance Company, under a policy which carried an uninsured motorist provision in plaintiff's favor. It was claimed that Fisher was insured by defendant Main Mutual Insurance Company. Because defendant Main refused to acknowledge any coverage, the plaintiff instituted this cause, a declaratory judgment proceeding, to determine whether Main was liable for her judgment against Fisher, or whether plaintiff should take action against her company (Farmers Equitable) under the uninsured motorist clause.

The issue and sole question presented is whether or not, at the time of the accident, Fisher was insured by Main. The trial judge, without a jury, rendered a declaratory judgment finding that Fisher was insured by Main. From that judgment Main appeals.

The facts, which are not in serious dispute, are these: On April 7, 1964, defendant Main entered into a written agency agreement with the Rite Insurance Agency of

378

Rock Island, Illinois. By this agreement the Rite Agency, among other things, was authorized on behalf of Main to solicit applications, collect premiums and deliver policies. In addition to Main, the Rite Agency represented other insurance companies. On June 27, 1964, in the Rite Agency, Fisher applied for liability insurance on his car which was later involved in the accident, paid $10 on the premium, and signed an application for such insurance with the State Security Insurance Company. This company is not a party to the suit, but was one of those represented by Rite. On July 3, 1964, at the Rite Agency, Fisher paid an additional $5 on his premium. On July 8th, State Security denied the application and on July 9th Rite sent Fisher a memorandum to that effect. Following receipt of this memorandum, Fisher called the Rite Agency and was told that he was covered and that the agency was getting him insurance through another company.

On July 13, 1964, the Rite Agency made application for insurance for Fisher to defendant, Main Mutual, requesting coverage commencing on that date. Fisher did not sign this application. No action was taken on this application by defendant Main, and no follow-up request for action was taken by Rite until August 27, 1964. In the meantime, Fisher's accident with plaintiff occurred on August 2nd and on August 8th Fisher so notified the Rite Agency. In response to the follow-up request of Rite, Main replied on August 28, 1964, that they had no record of having received the application dated July 13th.

The agreement between Main and the Rite Agency provided that Rite had authority "to solicit, receive and accept applications for . . . insurance . . . ; to issue, deliver, renew and countersign policies, bonds, certificates, endorsements and binders which the company may, from time to time, authorize . . . ; to collect and receipt for premiums thereon and therefor; and to perform such other duties as are usually required of agents." In ad-

dition, the company's application form very legibly stated that "this application does not constitute a policy of insurance until accepted by the company." It is clear from the aforesaid agreement and application form that the Rite Agency had no authority to bind Main generally or to issue policies without Main's prior authorization. Based upon these two provisions, it is argued by Main that Rite was a mere soliciting agent without power to bind Main and that Main's failure to accept the application for insurance prevents its being liable in this case.

The trial judge, in a considered opinion, concluded that even though the Rite Agency merely had authority to take applications, its failure to forward the application, or Main's failure to act promptly on the application, was chargeable to Main. The trial court pointed out that nearly three weeks elapsed between the time of the application and the date of the accident; that during said period of time, Fisher drove his car in reliance on the agent's assurance that he was covered, that Fisher had a collision which subjected him to a $5,000 judgment, and that under these circumstances Main should be estopped from denying its liability.

There is a considerable body of authority from many jurisdictions to support the trial court's conclusions.

The first question to be considered is whether or not the failure of Rite to submit Fisher's application to Main, or Main's failure to act upon it promptly, if it was submitted to them, creates liability on the part of Main. Our Supreme Court in the recent case of Zak v. Fidelity-Phenix Ins. Co., 34 Ill2d 438, 216 NE2d 113, held that where an insured is prejudiced by an unreasonable delay in disclaiming coverage, the insurer is estopped to assert noncoverage and becomes liable.

In Snyder v. Redding Motors, 131 Cal App2d 416, 280 P2d 811, an insurer was held liable where the application wasn't acted upon within a reasonable time and the

applicant became involved in a collision. The court said: "It is a matter of common knowledge that respondents proceeded to apply for the insurance policy in the same manner as is done by the great majority of automobile purchasers. And it is likewise a matter of common knowledge that such policies issue as a matter of course unless there is some fraud or misrepresentation on the part of the applicant." In Voss v. American Mut. Liability Ins. Co. (Mo App), 341 SW 270, a case in which an applicant was assured upon making a down payment that he was covered, the court stated: "There is ample authority for the rule that an unreasonable, unwarranted and unexplained delay on the part of an insurance company in acting on an application, and in retaining the premium, may subject it to liability to an applicant who has been thereby misled, to his injury." Numerous other authorities have concurred. In 7 Am Jur2d, at page 296, the editors state: "Where the insurer retains the premium paid on an application and permits an unreasonable delay to occur before rejecting the application and returning the premium, it may be liable to an applicant who has been misled thereby to his injury." In Appleman, Insurance Law and Practice, Vol 12, § 7226, the author states: "The more liberal, and probably the better rule, is to the effect that an insurance company obtaining an application for insurance is under a duty to accept or reject it within a reasonable time. By failure to act upon an application duly made, the period of delay may be so unreasonable as to estop the insurer from denying liability."

What constitutes a reasonable time for action by the insurance company upon an application presented to its agent ordinarily presents a question of fact. Milbank Mut. Ins. Co. v. Schmidt, 304 F2d 640; Voss v. American Mut. Liability Ins. Co., supra. It is our conclusion that in this case such a fact question was presented. From the evidence as we review it, we are of the opinion that the

trial court's conclusion that an unusual delay occurred between the application date for the insurance and the date of the company's reaction to it was correct.

Main argues, however, that it never received Fisher's application from the Rite Agency and that Rite did not have the authority to bind Main in this regard. There is considerable argument in the briefs as to whether or not Rite was Main's agent. Whether or not Rite was a general agent of Main with power to bind Main generally is not important. The question is whether or not Rite had the authority to act for Main in the solicitation of insurance. If it did, it then was Main's agent in that respect and Main was responsible for Rite's activities in that regard.

Appleman, in his previously cited work, states at sections 8697 & 7226:

> "The almost unanimous weight of authority is now . . . that a soliciting agent of an insurance company is the agent of the insurer and not of the insured for the purpose of soliciting and procuring the insurance and preparing the application.

> "Since an agent soliciting insurance can frequently bind an insurer as to matters pertaining to the taking and preparation of applications for insurance, an insurance company is chargeable with such agent's delay in retaining an application for an unreasonable length of time and in failing to forward it to such company for action."

There is no question but what Rite had the authority to solicit insurance on behalf of Main. That was spelled out with particularity in the agreement. Furthermore, at the trial Main's underwriter testified that Rite was selling Main's insurance, placing business with them, collecting their premiums and issuing and delivering their policies.

Such being the case, Main was responsible for Rite's conduct in soliciting Fisher's insurance. To this extent,

382

at least, Rite was Main's agent and the failure of Rite to properly handle the application of insurance becomes the failure of Main.

The judgment appealed from is affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.