NINA MAGNUS *et al.*, Plaintiffs, v. ROBERT D. BARRETT, Defendant (Tania Meder *et al.*, Plaintiffs-Appellants; Country Mutual Insurance Company, Defendant-Appellee).

First District (6th Division)   No. 1—88—2478

Opinion filed April 27, 1990.—Modified on denial of rehearing June 12, 1990.

Fishman & Fishman, Ltd., of Chicago (Ronald S. Fishman, of counsel), for appellants.

Beverly, Pause, Duffy & O'Malley, of Chicago (Michael W. Rathsack, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Tania Meder and Lara Meder, a minor, by Tania Meder, her mother, appeal from the trial court's entry of judgment in favor of defendant, Country Mutual Insurance Company. After a trial without a jury, the trial court found that plaintiffs were not insureds within the meaning of defendant's insurance policy and refused to reform the insurance policy. Prior to trial, the trial court also dismissed count IV, the negligence count of the fourth amended complaint.

Plaintiffs' appeal arises out of an automobile accident which took place on August 22, 1981. On that date, an automobile driven by a defendant, Robert Barrett, collided with a pickup truck driven by another plaintiff, Nina Magnus. Tania and Lara were passengers in the truck. Nina Magnus and both Meders were injured. Neither the Barrett automobile nor the Magnus truck was covered by liability or uninsured motorist insurance.

The truck was owned by Magnus Farms, Inc. Magnus Farms is owned and operated by Alexander Magnus, who is the father of Nina Magnus and the former husband of Tania Meder. Alexander Magnus also owns and operates another corporation, Manteks Company. The two companies owned a number of cars and trucks, all of which were insured by defendant.

In November 1980, Alexander Magnus purchased a 1980 Chevrolet Chevette which he gave to Tania Meder. Title to the Chevette was held in the name of Manteks Company. Alexander Magnus testified that he instructed Tania Meder to obtain insurance on the Chevette from defendant, and suggested that she call George Grenda, an agent for defendant who had serviced his accounts. Tania Meder testified that she contacted Grenda and informed him that she needed insurance for her car. She told him that the automobile was held in Manteks' name, but she asked that the vehicle be insured in her name and her household's name. Grenda replied that as soon as he received her first payment, the car would be insured. Tania stated that she subsequently signed a blank application for insurance at Grenda's office.

Grenda testified that although he spoke with Tania regarding the insurance, he first was contacted regarding this vehicle by an employee of Magnus Farms and was instructed to insure the vehicle. Grenda stated that he took notes during this contact as well as during his initial contact with Tania. He then filled out the necessary pa-

perwork, naming Tania as the driver of the vehicle on the application, but naming Manteks as the insured. Grenda stated that he filled out the application and signed Tania's name as applicant. (Prior to trial, the parties stipulated that Tania came to Grenda's office to apply for insurance and that she signed the application.)

On December 3, 1980, Tania delivered a money order in the sum of $44.32 to Grenda. She indicated in an accompanying letter that the premium was "to cover three months for car insurance." The letter also stated that the Chevette being insured was part of a fleet owned by Magnus Farms or Manteks. Shortly after receipt of the first premium, defendant issued its policy. The policy was issued to Manteks and showed Manteks as the insured. Tania made a second premium payment on March 13, 1981. This premium was accompanied by a letter from her which stated in part as follows:

> "I am enclosing a Money Order in the amount of $44.32 to cover three months for *my* automobile insurance." (Emphasis added.)

This letter again indicated that the Chevette was part of the Magnus and Manteks fleet. Tania continued to pay the premiums regardless of whether she received premium notices. Premium notices were sent to Manteks.

Grenda stated that he received the two letters from Tania, along with the enclosed premiums. Grenda was aware that title to the vehicle was in a corporate name and that the automobile was to be used by Tania at her home. He testified that he intended to insure the vehicle and to insure Tania because "[i]t is inherent with the policy." Nonetheless, Grenda noted that he was insuring the business because the business made the initial contact to him and because the business owned the vehicle. That is, he believed that he was insuring a business vehicle and that Tania was the assigned driver. Had he known that she was not an employee of Manteks, he would have approached insuring the vehicle differently. Grenda was unaware that Tania was Alexander Magnus' ex-wife or that Alexander Magnus had purchased the car as a gift for Tania.

After the policy was issued, Tania complained to Grenda that she was not receiving premium notices. Grenda attempted to rectify this by listing her as a lienholder so that defendant could send a late notice or cancellation notice directly to her home address. Defendant indicated that it would not list Tania as a lienholder because the insurance policy was for liability only, without coverage for comprehensive or collision coverage. No further action was taken with respect to this situation.

The original complaint was filed by Nina Magnus against Barrett and defendant. (The action against Barrett is not involved in this appeal.) The complaint subsequently was amended to include as plaintiffs Tania and Lara Meder. Defendant denied all claims. (Prior to trial, defendant admitted that Nina Magnus was covered under at least one of the policies issued to the residence of Magnus Farms and, therefore, her claims are not at issue in this appeal.) Defendant maintained that the policy did not cover the Meders for any uninsured motorist benefits. In the amended complaint, Grenda was added as a party defendant.

The trial court granted Grenda's motion to dismiss count IV, the negligence action directed against him. The court found that as an agent for a disclosed principal, Grenda could not be liable for negligence. After a series of motions and the filings of amended complaints, the court also granted defendants' motion to dismiss the negligence count.

With respect to the Meders, the trial proceeded on count III, a declaratory action seeking uninsured motorist benefits, and count V, an action seeking reformation of the insurance contract. After trial the court entered judgment in favor of defendant on those two counts.

We first address plaintiffs' contention that the trial court improperly denied their request for reformation of the insurance contract.

■■ Plaintiffs initially urge this court to find that the parties' subsequent voluntary reformation of the policy after this incident relates back to the initial policy date. We do not view this subsequent policy alteration as a reformation. The alteration was merely a change made in plaintiffs' coverage upon renewal of the policy which had been in effect at the time of the accident. Moreover, as this argument was not raised in the trial court, it has been waived for purposes of our review and cannot control our resolution of the propriety of the trial court's determination of the reformation count. See *Reeves v. Brno, Inc.* (1985), 138 Ill. App. 3d 861, 486 N.E.2d 405.

■■ ■ With respect to that count, we note that reformation permits amendment of an instrument in order to conform it to the actual agreement reached, and, of course, the law of reformation applies to insurance policies. (*National Ben Franklin Insurance Co. v. Davidovitch* (1984), 123 Ill. App. 3d 88, 462 N.E.2d 696.) When the contracting parties to a policy of insurance have made a mistake and the policy fails to express the written contract between them, and provisions other than those intended are inserted or admitted, equity has the right to grant relief by reformation of the contract. (*State*

*Farm Mutual Automobile Insurance Co. v. Hansen* (1972), 7 Ill. App. 3d 678, 288 N.E.2d 523.) In cases in which reformation of an insurance contract has been allowed, there typically has been a clear showing of what the plaintiff intended to procure from the defendant insurer and of the latter's knowledge of that intention, as a result of either express directions from the insured or by knowledge on the part of the insurer of circumstances wholly inconsistent with the provisions of the policy as issued. (*Phillips v. Salk, Ward & Salk, Inc.* (1974), 20 Ill. App. 3d 359, 314 N.E.2d 262; *State Farm Mutual Automobile Insurance Co. v. Hanson* (1972), 7 Ill. App. 3d 678, 288 N.E.2d 523; *Sedlacek v. Sedlacek* (1969), 107 Ill. App. 2d 334, 246 N.E.2d 6; *New York Life Insurance Co. v. Rak* (1961), 30 Ill. App. 2d 86, 173 N.E.2d 603.) Nonetheless, reformation of a contract should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or a mistake by one party and fraud by the other. *319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288.

▉ We find that the trial court's refusal to permit reformation of the insurance contract was manifestly erroneous. Our review of the record reveals that Grenda mistakenly believed he was insuring a company car, one which would not need the type of coverage required for a personal use automobile. He testified that had he known he was insuring a personal use automobile, he would have approached the situation differently. Nonetheless, he believed he was insuring Tania, as the driver of the vehicle, and to that end, listed her as principal driver. In so doing, Grenda intended to and believed he had adequately covered Tania's vehicle. Tania also intended to obtain adequate coverage for her vehicle. She believed Grenda had written the policy to fully cover her vehicle. She was under the impression that it was proper for the insurance company to name Manteks on the policy because it owned the automobile.

We believe it is clear that both Tania and Grenda thought that the policy, as written, would provide uninsured motorist and liability coverage to Tania. Grenda thought so because he believed that she was an employee of the named insured, and thus would be entitled to that coverage, and Tania thought so because she believed Grenda had properly written the insurance. Grenda and Tania reached a common understanding regarding coverage, but then inaccurately reflected that understanding when reducing the agreement to writing. The policy fails to express the true intent of the parties because each of them was mistaken as to who should be the policy's insured. In our

view, reformation of the insurance policy is the proper remedy in such a situation. See, *e.g.*, *State Farm Mutual Automobile Insurance Co. v. Hanson* (1972), 7 Ill. App. 3d 678, 288 N.E.2d 523; *Beddow v. Hicks* (1940), 303 Ill. App. 247, 25 N.E.2d 93.

We note that as written, the policy provides no meaningful coverage in a situation such as the one under our consideration. That is, if, as here, Tania were to be involved in an accident with an uninsured driver, she would not be entitled to uninsured motorist benefits *unless* she was in the Chevette. Thus, she would be denied coverage if the accident occurred when she was in another vehicle or when she was a pedestrian. Significantly, although the vehicle was insured under Manteks' name, no one from Manteks used the vehicle, and Tania was not its employee. No one from Manteks would ever seek the benefit of the liability or the uninsured motorist coverage of the policy. And paradoxically, Tania, who paid the premiums, would be unable to do so either. Grenda and Tania each testified that this was not the result that they intended. We find that the trial court improperly refused to grant relief in the form of reformation of the insurance policy. The policy should be reformed to reflect Tania Meder as an insured.

In view of our determination of the reformation issue, we deem it unnecessary to consider plaintiffs' contention that Tania was an insured under the policy as originally written, or whether the trial court erred in dismissing the negligence count against Country Mutual.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with these holdings.

Judgment reversed and remanded.

LaPORTA, P.J., and EGAN, J., concur.