LEONARD E. ZANNINI *et al.*, Plaintiffs-Appellants, v. RELIANCE IN-SURANCE COMPANY OF ILLINOIS, INC., Defendant-Appellee.

First District (5th Division)   No. 1—89—2832

Opinion filed November 30, 1990.

Tribler & Orpett, P.C., of Chicago (Mitchell A. Orpett and Michael J. Meyer, of counsel), for appellants.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Colleen H. Considine, and Sarah Hansen Sotos, of counsel), for appellee.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (William S. Hanley and Alane A. Arbogast, of counsel), for *amicus curiae* The Independent Insurance Agents of America and The Independent Insurance Agents of Illinois.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs Leonard Zannini (Zannini), subrogor, and Employers Reinsurance Corporation (Employers), subrogee, appeal from an order of the circuit court of Cook County, directing a verdict in favor of defendant Reliance Insurance Company of Illinois, Inc. (Reliance). The Independent Insurance Agents of America and The Independent Insurance Agents of Illinois have filed an *amicus curiae* brief supporting plaintiffs' plea for reversal of the trial court's order. We affirm.

The facts of the case are as follows.

In November 1983 Zannini contacted John Nesslar, an insurance representative through whom Zannini had previously obtained other insurance policies for his home and business. Zannini informed Nesslar that he was selling his home in Barrington, Illinois, and was moving into an apartment in Rolling Meadows. He wished to convert his homeowner's insurance policy, which he had obtained from Nesslar and was written through Maryland Casualty Insurance Co., to a tenant's policy to cover his personal property at his new residence and during the process of moving. Nesslar had in his possession a copy of Zannini's current homeowner's policy, and he knew that Zannini wanted to maintain the same level of coverage, including an additional endorsement for scheduled personal property and jewelry with a $25,315 total value, which had been part of the homeowner's policy with Maryland Casualty.

Nesslar was an independent insurance agent and broker. He had nonexclusive agency contracts with at least two insurance carriers and was free to contact licensed agents of other carriers to obtain insurance policies that would meet the needs of his clients. Nesslar was authorized by the limited agency contract with Reliance to (1) solicit and submit applications for insurance, (2) issue and deliver policies, (3) execute fidelity and surety bonds, (4) collect and receive premiums, (5) cancel policies, as well as (6) bind coverage and execute insurance contracts in accordance with guidelines furnished by Reliance.

When Zannini contacted him, Nesslar agreed to provide Zannini with the insurance coverage he desired through Reliance. Zannini's

homeowner's policy was cancelled effective November 15, 1983, and a new policy was issued by Reliance, through Nesslar, effective November 17, 1983. However, because Nesslar neglected to transmit to Reliance the additional schedule of personal property and jewelry which Zannini wanted covered, the policy issued to Zannini was a standard tenant's policy, which only insured jewelry up to $500 in the event of theft. This omission was not noticed by either Nesslar or Zannini.

On or about November 13, 1983, Zannini packed his personal belongings, including certain items of jewelry, into cartons in preparation for the move from his Barrington home. Shortly thereafter, a moving company removed Zannini's belongings from the Barrington home and placed them in storage for a five-week hiatus until Zannini's new residence was ready for occupancy. It is unclear whether the carton containing the jewelry was placed in storage or whether it remained with Zannini at his interim residence. In any event, it was not until sometime after December 27, 1983, when Zannini's belongings were delivered to his new residence, that he discovered that certain items of jewelry valued at $13,500 were missing. Zannini contacted Nesslar to report the loss and on January 20, 1984, notified the police concerning the missing jewelry.

On January 18, 1984, Nesslar sent a letter to Reliance informing the company of Zannini's loss. Nesslar indicated in this letter that a separate schedule for jewelry and other personal property had been mistakenly omitted from Reliance insurance policy No. HC 2859403—1, which had been written in November 1983 for Zannini and which had become effective November 17, 1983. The letter also noted that it was unclear exactly when and in what manner the loss occurred.

Subsequently, Nesslar and Reliance engaged in several communications concerning the matter. On April 4, 1984, Reliance sent a letter to Nesslar informing him that the claim was being denied. Specifically, the letter noted the following:

> "We received this homeowner application on December 13, 1983. There was no mention or request for a jewelry schedule. On December 30, 1983, you wrote to Nancy Morrow advising her the insured would be putting his household goods into storage for an indefinite period of time. On January 9, 1984, Nancy wrote advising you there was no coverage for indefinite storage on the policy; she further advised you the insured should obtain insurance from the storage facility. Again, there was no mention or request to add a jewelry schedule to the policy.
>
> On January 18, 1984, after the loss occurred, you wrote to Shaun Morrison advising him you neglected to add the jewelry

schedule to the homeowner application. You further advised me in two subsequent telephone conversations you bound the jewelry schedule with the insured.

Jack, your agency contract with this Company requires you to notify us within seven (7) days of all binders you issue. You would have had to notify us of this jewelry schedule binder within seven days of the policy inception date of 11/17/83. Obviously, from the various correspondence, you failed to do this.

*** We cannot honor your apparent verbal binder as you failed to adhere to the terms of your agency contract.

We still have further investigation to do before we even extend the $500 basic coverage for the jewelry."

On May 10, 1984, Reliance sent a "reservation of rights" letter to Zannini, informing him of its position, which was that the policy did not contain any additional forms or schedules so that the limit of liability, under the policy, was $500 for loss by theft. Zannini was also informed that, due to several discrepancies in the facts and circumstances, it appeared possible that the loss was not covered by the policy. Therefore, further investigation was being undertaken.

At some point in time Nesslar submitted Zannini's claim to his own errors and omissions insurance carrier, Employers, who satisfied the claim. Thereafter, on March 28, 1985, Zannini, as subrogor, and Employers, as subrogee, filed suit against Reliance to recover for the loss Zannini sustained. The complaint sought reformation of Zannini's insurance contract with Reliance and alleged that Reliance was estopped from denying coverage for Zannini's claim.

In a bench trial that commenced on May 31, 1989, Judge Curry granted Reliance's motion for directed verdict at the close of plaintiffs' evidence. The trial court concluded that, although there had been a meeting of the minds between Zannini and Nesslar concerning the additional coverage, Nesslar's mistake in omitting the jewelry schedule in the application with Reliance was not attributable to Reliance because Nesslar had been acting as Zannini's broker/agent, not Reliance's agent, when he placed the insurance with Reliance. Consequently, Nesslar's mistake was a unilateral one that could not be the basis for a reformation action.

Having concluded that the insurance contract could not be reformed, the trial court found that Reliance had no liability for Zannini's loss. With respect to the $500 basic coverage, the trial court noted that Zannini never made a claim for $500 under the basic policy. Having failed to demand this compensation, there could be no vexatious delay in responding to the claim and no estoppel based upon a

refusal to satisfy the claim.

After their motion for post-trial relief was denied, plaintiffs brought this appeal, making the following arguments:

(1) That Nesslar acted as Reliance's agent, binding Reliance to provide insurance to Zannini for the additional schedule of personal property and jewelry, despite Nesslar's failure to give Reliance timely and accurate notice of the risk he agreed to assume.

(2) Alternatively, that Zannini was entitled to reimbursement under the basic policy in the amount of $500, in addition to fees and penalties recoverable pursuant to Illinois insurance law, based upon Reliance's unreasonable and vexatious delay in settling the claim (see Ill. Rev. Stat. 1989, ch. 73, par. 767) and that Reliance's failure to respond to or satisfy this claim should estop it from raising any policy defenses at this time.

The Independent Insurance Agents, in their *amicus* brief, encourage this court to recognize the dual agency role of an independent insurance agent acting as Nesslar did in this case. They also suggest that public policy concerns would support the notion that a mistake made by an independent agent in obtaining the proper coverage requested by a purchaser should be the responsibility of the insurance company and not the purchaser. Reliance, of course, argues that the trial court properly decided that Nesslar was the broker/agent of Zannini and that this court should affirm the directed verdict granted by the trial court on all counts.

■ Initially, we note that when a defendant moves for a finding or judgment in his favor at the close of a plaintiff's case in chief, the trial court is required to apply a bifurcated analysis to the evidence that has been presented. First, the trial court must determine whether the plaintiff has made out a *prima facie* case, *i.e.*, whether the plaintiff has presented at least some evidence on every essential element to his cause of action. If this has not been done, defendant is entitled to judgment as a matter of law. Secondly, if plaintiff has made out a *prima facie* case, the trial court must weigh the evidence, considering any evidence favorable to the defendant, assess the credibility of the witnesses, and draw any reasonable inferences from the testimony. If in this process some of the evidence serves to negate the evidence necessary to plaintiff's *prima facie* case, then defendant is entitled to judgment in his favor. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) Upon review the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.

In the present case the trial court recited the two-step process set forth in *Kokinis* and then strictly and carefully adhered to this standard. Based upon the facts before the court, we do not believe that the trial court's conclusion was against the manifest weight of the evidence.

It is obvious from the arguments at trial and those presented on appeal that the resolution of this case turns upon a determination of the nature of the role that an independent insurance agent plays when he secures an insurance contract for his client. Stated more succinctly, the question, ultimately, is whether an independent insurance agent, such as Nesslar in this case, acts as the agent of the insured or the insurer or both. This question is of importance because under basic agency principles, any information known by the agent is deemed to be in the knowledge of the principal. Thus, in the present case, if Nesslar was the agent of Reliance at the time he was processing Zannini's insurance request, his failure to obtain the proper coverage would be attributed to Reliance. However, the answer, admittedly, is not a clear-cut one and requires an understanding and clarification of agency law in the context of insurance law. For this reason we begin our discussion with an overview.

■■ Historically, the issue of whether a party was the agent of the insurer or the insured has turned on a determination of whether that party was an "agent" or a "broker." (*Ross v. Thomas* (1977), 45 Ill. App. 3d 705, 360 N.E.2d 126; *Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 345 N.E.2d 172.) Generally speaking, a person who was directly employed by the insurance carrier and owed allegiance to that carrier alone was considered the agent of that carrier. A broker, on the other hand, having no allegiance to any one carrier, was generally held to represent the interests of the insured, not the insurer. Hence, a broker was typically not considered to be the agent of the insurer (see Ill. Rev. Stat. 1949, ch. 73, par. 1065.37 (now repealed)), although it was also recognized that a broker could act as an agent of the insurer for certain purposes or even be the agent of both parties in certain instances. (*City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477; *Lynn v. Village of West City*, 36 Ill. App. 3d at 564-65.) The relationship between the alleged agent or broker and the insurer is a question of fact. *Ross v. Thomas*, 45 Ill. App. 3d at 708.

Certainly, the question of agency becomes more blurred in situations such as the one in this case, where the insurance representative who procures the insurance coverage is not clearly a broker or an agent, but a blend of both, *i.e.*, an independent representative who has entered into nonexclusive, limited agency contracts with various

insurance carriers, which enables him to write policies for those companies, but also allows him to choose the carrier and go outside these agency contracts to broker an insurance policy when necessary to meet the needs of his client. As stated earlier, the Independent Insurance Agents of America and of Illinois, in their *amicus* brief, urge this court to recognize that these independent agents are representing the interests of both the insurer and the insured, simultaneously. We believe, however, that such a conclusion would lead to more confusion and, at times, absurd results. For instance, when a client approaches an independent insurance agent and asks that he procure certain insurance coverage for him without specifying the carrier, just as Zannini did here, and the independent agent, who has several agency contracts with various insurance carriers, is free to choose the carrier, then a question would be raised as to which one of the carriers we should attribute the independent agent's failure to obtain the coverage requested. While it seems clear in the present case that Nesslar identified the proposed carrier to the client at the time of the request, we do not feel that this fact is of any significance.

We acknowledge that an independent agent possesses a certain duality which allows him to act as both an agent or a broker. However, it is unimportant what title we assign to him since it will be his conduct at the time of a specific transaction that will define his relationship and be determinative of the liability. (*Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, 551 N.E.2d 395.) Thus, when an independent agent's act of omission or commission results in a loss, certain factors should be examined to determine to whom he breached his duty and thus whether, in that particular instance, he was acting as the agent of the insured or the insurer. The factors to be considered are: (1) who first set the agent in motion, (2) who controlled the agent's action, (3) who paid the agent, and (4) whose interests the agent was attempting to protect. *Krause v. Pekin Life Insurance Co.*, 194 Ill. App. 3d at 804-05.

In this case Zannini set Nesslar in motion by requesting that he obtain a tenant's policy. Nesslar was free to choose any insurance carrier and was not controlled by Reliance in making the selection. The evidence revealed that Zannini and Nesslar knew each other for years, that they were friends and that Zannini had purchased other insurance through Nesslar. Despite the fact that Nesslar had the capability of being Reliance's agent, it seems clear that Nesslar was acting as Zannini's agent and was protecting his interests when he sought to procure the insurance coverage Zannini requested. Consequently, the manifest weight of the evidence supports the conclusion that Nesslar

breached the duty of care he owed to Zannini when he failed to obtain the proper coverage, making him, not Reliance, liable to Zannini for any loss. (*Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc.* (1988), 178 Ill. App. 3d 261, 533 N.E.2d 81; *Omar v. St. Paul Fire & Marine Insurance Co.* (1988), 175 Ill. App. 3d 77, 529 N.E.2d 686.) Having found that Nesslar was acting as Zannini's agent, there was no mutual mistake which would allow for a reformation of the contract and estoppel does not apply since coverage was not denied based upon an unauthorized act of Reliance's agent.

■ We now consider whether Reliance was obligated to compensate plaintiffs to the extent of the $500 basic policy coverage for a loss in the event of theft, whether Reliance's failure to adjust the claim estops it from now raising any policy defenses, and whether Reliance's behavior is an example of unreasonable and vexatious delay, entitling plaintiffs to fees and penalties pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 767). The trial court directed a verdict in favor of Reliance on this matter, having found that Zannini never filed a claim with Reliance asking to recover under the terms of the policy as it was written, *i.e.*, for the $500 limited coverage. The trial court found that the demand had always been for full recovery pursuant to the disputed additional schedule of jewelry and personal property. We agree and find that the manifest weight of the evidence supports this conclusion.

At trial the testimony of both Zannini and Nesslar indicated that there had been little interest in pursuing the potential coverage under the Reliance policy that had been issued. In fact, Nesslar admitted that no request was ever made to Reliance for the $500 potential coverage. While it appears that Reliance contemplated a claim pursuant to the basic policy and attempted to address this matter with Zannini, it seems equally clear that this potential coverage was abandoned by Zannini and Nesslar. Consequently, no demand having been made or pursued, Reliance cannot be held liable for unreasonable and vexatious delay for a failure to adjust the claim.

For the reasons stated above, we affirm the order of the circuit court of Cook County granting a directed verdict in favor of defendant Reliance Insurance Company of Illinois as to both counts of plaintiffs' complaint.

Affirmed.

COCCIA, P.J., and GORDON, J., concur.