(No. 71336.—

LEONARD E. ZANNINI, Subrogor and Indiv., *et al.*, Appellants, v. RELIANCE INSURANCE COM-PANY OF ILLINOIS, INC., Appellee.

*Opinion filed March 19, 1992.*

Tribler & Orpett, P.C., of Chicago (Mitchell A. Orpett and Michael J. Meyer, of counsel), for appellants.

Jay S. Judge, of Park Ridge, and Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Colleen Considine Coburn and Sarah Hansen Sotos, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

This cause involves a complaint for reformation of contract and for damages against Reliance Insurance Company of Illinois, Inc. (Reliance). Reliance maintains that a tenant's policy of insurance issued to plaintiff Leonard E. Zannini (Zannini) did not cover a loss of jewelry in the amount of $13,550. The written policy between Zannini and Reliance provides coverage for jewelry loss in an amount of $500. Zannini, as subrogor and individually, and the second plaintiff, Employers Reinsurance Corporation (Employers), as subrogee, assert, however, that an oral binder of insurance given by John

Nesslar (Nesslar), an agent of Reliance, bound Reliance to cover the loss, up to an amount of $25,315.

The case proceeded as a bench trial in the circuit court of Cook County, and at the close of plaintiffs' case, defendant moved for a directed verdict and the trial court granted the motion. The court found that plaintiffs failed to show that the binder was effective to bind Reliance to cover more than the $500 written policy amount. The appellate court affirmed. 206 Ill. App. 3d 910.

For the reasons stated below, we reverse the judgments of the appellate and circuit courts and remand this matter for further proceedings.

## FACTS

On March 28, 1985, Zannini filed an initial complaint against Reliance. On November 13, 1987, Zannini, as subrogor and individually, and Employers, as subrogee, filed an amended complaint against Reliance. The amended complaint alleges that Employers insured Nesslar, an "insurance producer," under an insurance policy for "errors and omissions." The amended complaint further alleges that Employers, on behalf of Nesslar, paid Zannini $13,550 for the loss which Zannini incurred. As a result of its payment, Employers is partially subrogated to the rights of recovery of Zannini against Reliance.

Count I of the amended complaint seeks reformation of the contract of insurance between Reliance and Zannini to include coverage for jewelry in the amount of $25,315; a declaratory judgment declaring that Reliance is estopped from raising any policy defenses against plaintiffs for the loss and that Reliance is the insurer of Zannini under the policy; and compensatory damages of $13,550.

Count II alleges that in November 1983, as a result of Nesslar's binding of coverage, a contract of insurance

containing jewelry coverage of $25,315 arose by operation of law between Zannini and Reliance. Count II seeks a declaratory judgment and compensatory damages in addition to damages pursuant to the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767) for Reliance's allegedly "vexatious and unreasonable delay" in making payment to Zannini under the policy.

On September 13, 1985, Reliance filed a third-party complaint against Nesslar and Maryland Casualty Company (Maryland), which had insured Zannini under a homeowner's policy before Zannini obtained the tenant's policy from Reliance. The third-party complaint against Nesslar alleges that as a result of Nesslar's negligence, the policy Reliance issued to Zannini did not include coverage for scheduled personal property over the amount of $500. The third-party complaint against Maryland was subsequently dismissed.

### Trial Testimony

At trial, Zannini testified that prior to November 1983, he had a homeowner's policy with scheduled personal property with Maryland. In November 1983, Zannini told Nesslar that he had sold his home and would need coverage on personal property in an apartment, including coverage for jewelry in an approximate amount of $20,000. Nesslar told Zannini that he was a representative and agent of Reliance, and that he would place coverage with Reliance. Nesslar also stated that when Zannini requested coverage, the policy would be bound and in effect from that time forward.

At the end of December 1983 or the beginning of January 1984, Zannini discovered that he had suffered a loss of jewelry, apparently by theft. Zannini then contacted Nesslar and understood that Nesslar "would handle the claim and the whole matter." Zannini later received a letter from Reliance, dated May 10, 1984,

informing him that Reliance was still investigating the loss and would notify him of its decision. Zannini did not receive further correspondence from Reliance. Zannini stated that Reliance never denied his claim and never paid his claim.

On cross-examination, Zannini testified that he had known Nesslar for approximately 15 years, during which time Nesslar handled various insurance needs for him. Nesslar had placed Zannini's prior coverage with Maryland. Zannini did not request that Nesslar place coverage for the tenant's policy with a specific carrier.

Zannini received a written tenant's policy from Reliance. Zannini stated that he probably did not read the policy and did not notice any discrepancy in coverage between the written policy and the coverage Nesslar said that he would obtain. The policy Zannini received from Reliance was admitted into evidence. The policy does not contain a schedule for personal property. Zannini admitted that the policy provides a $500 limit for loss by theft of jewelry and other personal property.

Nesslar testified that in 1983, he was an insurance agent for Reliance. Nesslar had a contract with Reliance, effective in November 1983, to solicit and sell insurance for Reliance. The agency-company agreement between Nesslar and Reliance was admitted into evidence. Nesslar stated that the agreement authorized him to issue and deliver policies, collect premiums for the policies, cancel policies at his discretion, and bind coverage on behalf of Reliance. Nesslar stated that the agreement authorized him to bind Reliance to the agreement he made with Zannini in November 1983.

Nesslar stated that when Zannini contacted him in November 1983 to request coverage for jewelry, Zannini gave him a schedule and appraisals or bills of sale for jewelry. The total value of the scheduled jewelry was approximately $24,000 to $25,000. Nesslar told Zannini

that coverage for the jewelry would be provided, effective November 17, 1983, the date Zannini moved into his apartment. Zannini did not tell Nesslar with which company he wanted to place the coverage. Nesslar placed Zannini's coverage with Reliance because he was an agent for Reliance and because he wished to increase his "rather low" personal property lines with Reliance. Nesslar stated that Reliance also wanted him to increase the personal property writings he made. At the time he spoke to Zannini, Nesslar understood that he had authority, as an agent for Reliance pursuant to the agency-company agreement, to tell Zannini that coverage was effective.

After speaking with Zannini, Nesslar prepared an application for insurance. Nesslar also spoke with the rental manager of the apartment complex where Zannini was moving, in order to inquire about building security. Around November 15, 16, or 17, 1983, Nesslar obtained a brochure describing the property. Also around that date, Nesslar went to the apartment complex and took a Polaroid photograph of the property. Nesslar stated that the complex appeared to be "highly secured." Nesslar stated that he sent the photograph and brochure, along with the policy application, to Reliance.

After Nesslar submitted the documents to Reliance, he received notice from Zannini that some jewelry was missing. Subsequently, Nesslar viewed the policy and realized that he had not given Reliance the schedule for jewelry. Nesslar then reported the loss to Reliance by completing a standardized notice of loss. Nesslar also informed Reliance that he had failed to give Reliance the jewelry schedule and also that he had bound coverage for the jewelry with Zannini. Reliance responded by letter that Nesslar had not notified Reliance within seven days of binding coverage, as required under the agency-company agreement. The letter states that Reliance

"cannot honor your apparent verbal binder as you failed to adhere to the terms of your agency contract." Nesslar stated that Reliance did not, however, inform him that Nesslar did not have the authority to bind the risk.

On cross-examination, Nesslar stated that during the time the agency-company agreement was in effect, he had business relationships with other insurance companies and was an agent of one other insurance company. Nesslar also served as a broker. Nesslar explained that as a broker, in contrast to an agent, he was not able to deal with insurance carriers directly, but was able to place coverage only through licensed agents of insurance companies. Nesslar stated that the agency-company agreement with Reliance was not an exclusive contract for either him or Reliance, and he placed homeowner's policies with other carriers during the effective time of the agreement. Nesslar stated that the agreement provides that the agent is an independent contractor and not an employee of Reliance.

Nesslar stated that he knew Zannini socially before they conducted business together. Nesslar had obtained coverage for Zannini prior to obtaining a tenant's policy, including the homeowner's policy with Maryland. Nesslar stated that he was not an agent of Maryland; he "brokered" that policy through an agent of Maryland. The Maryland policy included a schedule of jewelry for approximately $25,000. The effective dates of the Maryland policy were July 29, 1983, through July 29, 1984. Nesslar stated that the Maryland policy was cancelled on November 17, 1983, when Zannini sold the home. In November 1983, Zannini requested the same coverage for scheduled jewelry on the tenant's policy as he had on the prior homeowner's policy.

Nesslar also admitted on cross-examination that the policy did not contain a schedule for personal property because he did not request the schedule from Reliance.

Nesslar admitted that Reliance did not have any knowledge of Zannini's request for scheduled personal property coverage before the alleged loss occurred.

## Lower Courts' Holdings

After Nesslar testified, the plaintiffs rested. Reliance moved for a directed verdict, and the trial court granted the motion. The trial court found undisputed that Zannini and Nesslar understood that the tenant's policy would include coverage for scheduled jewelry up to $25,000, and that Nesslar agreed to and purported to bind such coverage. Further, the trial court found that Nesslar mistakenly neglected to include the jewelry schedule with the application to Reliance for the policy and, therefore, a policy was issued without additional personal property coverage.

The trial court then held that the test to be applied to plaintiffs' reformation action was whether there was a unilateral mistake or a mutual mistake. The court reasoned that the issue could be resolved based on the status of Nesslar when he purported to bind coverage.

The trial court found that Nesslar was acting as Zannini's broker to place the desired coverage. Further, Nesslar was acting on behalf of Zannini and not Reliance. The court therefore held that there was no mutual mistake between Zannini and Reliance. Because a "meeting of the minds," a necessary element for a reformation action, was absent, plaintiffs failed to establish a *prima facie* case for reformation. The trial court held that the agency agreement with Reliance did not change the status of Nesslar in his dealings with Zannini. Further, the trial court found that estoppel to deny a claim did not apply to Reliance where there was no demand by Zannini for payment of the $500 under the policy. Finally, the trial court found that there was no "vexatious delay" in Reliance's payment of a claim for which there

was no coverage. Plaintiffs filed a post-trial motion, which the trial court denied.

In affirming the trial court, the appellate court also reasoned that the resolution of the instant case turned upon application of agency law, namely, a determination of whether Nesslar acted as the agent of Zannini or the agent of Reliance or both. The appellate court applied the factors of agency law set forth in *Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, 804-05, including who first set the agent in motion; who controlled the agent's action; who paid the agent; and whose interests the agent was attempting to protect. The appellate court held that Nesslar, as an independent representative with nonexclusive, limited agency contracts with various insurance carriers, was a "blend" of both agent and broker. 206 Ill. App. 3d at 915-16.

The appellate court held that Nesslar, rather than Reliance, was liable to Zannini for any loss. The appellate court agreed with the trial court that because Nesslar was acting as Zannini's agent, there was no mutual mistake which would allow for a reformation of the contract. Further, because Zannini and Nesslar did not make a demand for the $500 coverage included in the written policy, Reliance could not be held liable for unreasonable and vexatious delay for a failure to adjust the claim. In addition, estoppel did not apply because coverage was not denied.

## ANALYSIS

On appeal to this court, Zannini and Employers contend that: (1) the appellate court's opinion effectively eliminates oral binders of insurance coverage; (2) the lower courts' decisions conflict with general insurance law and Illinois case law in that: (a) the decisions erroneously focused upon actions taken by Nesslar after the formation of the oral contract of insurance to implicitly

render that contract void; (b) Nesslar had express authority to bind coverage on behalf of Reliance; and (c) the evidence at trial established the essential elements of an oral contract of insurance; (3) the appellate court's reliance upon the four-part agency test was improper; (4) the four-part test never was intended to apply where, as here, there was express authority evidenced by a written instrument; and (5) decades of overly rigid and erroneous applications of the four-part test have rendered the test "relatively useless" for agency determinations in cases involving insurance producers and therefore should be rejected by this court.

In response, Reliance asserts that the appellate court correctly analyzed the dual capacity of the independent insurance agent; plaintiffs' failure to present evidence that Nesslar was Reliance's agent precludes review of the binder issue; because Reliance issued the policy as requested, reformation was improper because there was no mutual mistake of fact; Employers is not entitled to subrogation; and plaintiffs' abandonment of their estoppel claim constitutes a waiver of the argument in this court.

In reply, plaintiffs assert that the written contract of insurance between Zannini and Reliance should be reformed to include a schedule of jewelry in the amount of $25,000, because: (1) (a) a valid oral contract of insurance existed on November 17, 1983; and (b) Nesslar had express written authority to enter into a binding contract of insurance on behalf of Reliance; and (2) Reliance clothed Nesslar with actual authority to issue contracts, and no private instructions or limitations upon his authority could affect the rights of Zannini.

In a nonjury trial, where defendant moves for a finding or judgment in its favor, the trial court is to weigh the evidence, taking into account the credibility of the witnesses and the weight and quality of the evidence.

(Ill. Rev. Stat. 1985, ch. 110, par. 2—1110; *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.) The trial court, however, first must determine whether plaintiff has presented a *prima facie* case. If plaintiff has not, then the trial court should grant the motion and enter judgment in defendant's favor. If plaintiff *has* set forth a *prima facie* case, the trial court then weighs the evidence. (*Kokinis*, 81 Ill. 2d at 154-55; *Rasmussen v. LaMagdelaine* (1991), 208 Ill. App. 3d 95, 101-02.) A trial court's determination on the motion will not be reversed on appeal unless the decision is contrary to the manifest weight of the evidence. *Kokinis*, 81 Ill. 2d at 154.

We hold that the trial court's grant of Reliance's motion for directed finding as to Zannini and Employers' reformation claim is contrary to the manifest weight of the evidence. Therefore, we reverse the judgments of the trial and appellate courts and remand this matter for further proceedings. Further, because the trial court's determinations regarding Zannini and Employers' two other claims, those based upon "unreasonable and vexatious delay" pursuant to the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767) and estoppel, were based upon the court's conclusion as to the reformation count, the trial court, upon remand, must reconsider those claims.

Plaintiffs assert as the basis of their reformation claim that the written policy did not reflect the true agreement between Zannini and Reliance. In order for a court to reform an instrument on the ground of mistake, " 'the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another.' " (*Wilcox v. Natural Gas Storage Co.* (1962), 24 Ill. 2d 509, 512, quoting *Ambarann Corp. v. Old Ben Coal Corp.* (1946), 395 Ill. 154,

166.) The law of reformation applies to insurance policies. (*Magnus v. Barrett* (1990), 197 Ill. App. 3d 931, 934.) An insured seeking reformation of an insurance policy is required to make a clear showing of what the insured intended to procure from the insurer, in addition to the insurer's knowledge of that intention based upon express directions from the insured or the insurer's knowledge of circumstances wholly inconsistent with the policy provisions as issued. *Magnus*, 197 Ill. App. 3d at 935.

Accordingly, in the instant case, Zannini and Employers were required to show what coverage Zannini intended to procure and that Reliance knew Zannini's intention through Zannini's express directions or Reliance's knowledge of circumstances "wholly inconsistent" with the policy issued to Zannini. The trial court properly found that Zannini and Employers presented sufficient evidence to show that Zannini intended to obtain coverage through Nesslar for jewelry in an approximate amount of $25,000. Reliance asserts, however, that the trial court properly held that Nesslar was acting as Zannini's agent. We disagree. We hold that the trial court's determination that Nesslar was not acting as the agent of Reliance is contrary to the manifest weight of the evidence. We hold that Zannini and Employers brought sufficient evidence to show that Nesslar was acting as an agent of Reliance in binding the coverage for Zannini; and therefore, through Nesslar, Reliance had knowledge of Zannini's intent.

The lower courts misconstrued the agency question in the instant case. We note that the appellate court held that Nesslar was acting as a "blend" of agent and broker. Insurance law, however, clearly distinguishes between an agent and a broker. *Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, defines a "broker of insurance" and an "agent":

· "A broker is an individual who procures insurance and acts as a middleman between the insured and the insurer, who solicits insurance business from the public under no employment from any special company and who, having secured an order, places the insurance with the company selected by the insured, or in the absence of any selection by the insured, with a company he selects himself. [Citation.] An agent is an individual who has a fixed and permanent relation to the companies he represents and who has certain duties and allegiances to such companies." (*Krause*, 194 Ill. App. 3d at 804-05.)

(See also 3 Couch on Insurance 2d §25:95, at 453 (rev. 1984).) The determination of whether a person is acting as an agent or a broker governs to whom he may owe a duty. *Krause*, 194 Ill. App. 3d at 805.

In the instant case, the agency-company agreement gave Nesslar express authority to bind coverage. The agreement, admitted into evidence, provides that Nesslar, as "agent," has the authority to "bind coverage and execute contracts in accordance with the guidelines furnished from time to time by the Company or as authorized by the Company with respect to specific risks." The agreement does not put specific limitations upon the express authority of Nesslar to bind coverage for Reliance. Thus, in the instant case, the lower courts improperly applied the four-part agency test to determine the agency of Nesslar, where, as here, express agency authority had been given to Nesslar by Reliance.

*Wille v. Farmers Equitable Insurance Co.* (1967), 89 Ill. App. 2d 377, illustrates a court's construction of an agency-company agreement. In *Wille*, the Rite Agency purported to bind automobile coverage for the insured. Rite made an application for the insurance to Main Mutual, the defendant insurance company. The insured had not signed the application, and Main Mutual did not take action on the application. Rite did not request any fol-

low-up for further action on the application. Main Mutual later denied having received the application. When the insured suffered a loss, the parties disputed whether Rite had had the authority to bind the coverage on behalf of Main Mutual.

The court found that the agency agreement between Main Mutual and Rite did not give Rite the power to bind Main Mutual generally. (*Wille,* 89 Ill. App. 2d at 382.) The court stated that the question of whether Rite was the agent of the defendant insurance company turned, however, not on whether Rite was a general agent of Main Mutual with power to bind generally. Rather, the question was whether or not Rite had the authority to act for Main Mutual in the specific act at issue, the solicitation of insurance. If so, then Rite was the company's agent in that respect and Main Mutual was responsible for Rite's actions in that regard. *Wille,* 89 Ill. App. 2d at 382.

Because the written agency agreement between Rite and Main Mutual specifically gave Rite the authority to solicit applications for insurance on behalf of Main Mutual, Rite was the agent of Main Mutual when he procured the insured's application, and Main Mutual was responsible for Rite's conduct in soliciting the insurance. Accordingly, the court held, Rite's failure to follow up on the insured's request for insurance became the failure of Main Mutual. *Wille,* 89 Ill. App. 2d at 382-83.

In the instant case, by contrast, the agency-company agreement gives Nesslar general authority to bind coverage for Reliance and to execute insurance contracts. Zannini and Employers brought evidence to show that when Nesslar bound coverage for jewelry for Zannini, he acted in accord with his express authority to do so in the agency-company agreement.

*Krause* also provides, however, that the person's conduct, rather than a title, determines whether he is an

agent or a broker in a given transaction. (*Krause*, 194
Ill. App. 3d at 805.) In the instant case, Nesslar's testi-
mony distinguished between his actions as a broker for
Maryland and his actions as an agent of Reliance.
Nesslar explained that he acted as a broker, without au-
thority to deal directly with the insurance company,
when he obtained the Maryland policy. By contrast, he
acted as an agent, pursuant to express authority, when
he bound coverage for Zannini from Reliance. Nesslar's
testimony regarding his actions as agent for Reliance is
in accord with the proper definition of "agent" provided
in *Krause*. The evidence does not support a conclusion
that Nesslar was acting as a broker when he procured
the insurance for Zannini from Reliance.

We note that the appellate court relied upon the hold-
ing of *Krause* to uphold the trial court's determination
that Nesslar was a broker for Zannini rather than Reli-
ance's agent. The facts of *Krause*, however, are distin-
guishable from those of the instant case. In *Krause*, the
plaintiff alleged that the defendant, Pekin Life Insurance
Company, was liable for the acts of Haverstuhl, a pro-
curer of insurance who was acting as Pekin's agent.
Plaintiff alleged that Haverstuhl had fraudulently altered
plaintiff's application for insurance to reflect a lesser
benefit than plaintiff had applied for.

The court held that Haverstuhl was not acting as Pe-
kin's agent at the time of the transaction. The court
noted that both Haverstuhl and an officer of Pekin testi-
fied that Haverstuhl was not an agent of Pekin. In addi-
tion, Haverstuhl, the Pekin officer, and an underwriter
for Pekin all testified that Haverstuhl had no authority
to bind Pekin to a policy of insurance. The evidence also
showed that Pekin had an agency agreement with
Haverstuhl's employer but not with Haverstuhl. Further,
according to the underwriter, pursuant to the agency
agreement, no agent had the power to bind Pekin to a

policy of insurance, and there were no exceptions to the rule. *Krause*, 194 Ill. App. 3d at 803.

The appellate court in *Krause* affirmed the trial court's grant of defendant's motion for judgment at the close of the plaintiff's case. The court held that the plaintiff failed to establish that Haverstuhl had authority to contract for the insurance with the insurance company. Accordingly, the court held that Haverstuhl was a broker and not an agent of the insurance company. *Krause*, 194 Ill. App. 3d at 805.

Unlike the procurer of insurance in *Krause*, Nesslar had an agency-company agreement with Reliance, the company with which he placed coverage. The agreement gave Nesslar power to bind Reliance. The weight of the evidence shows that Nesslar was an agent of Reliance, expressly authorized to bind coverage on behalf of Reliance.

Further, we agree with Zannini and Employers that Nesslar was authorized to and did enter into a valid preliminary oral contract of insurance when he agreed to bind coverage for Zannini. An insurance binder "is in the nature of temporary insurance, and insurance coverage by its use is effected at once." (*Altrocchi v. Hammond* (1958), 17 Ill. App. 2d 192, 200.) Further, "[a]n agent possessing power to bind the insurer has authority to bind it by a preliminary or temporary contract of insurance." 12A J. Appleman, Insurance Law & Practice §7230, at 169 (rev. 1981).

A contract of insurance is established " 'if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, the amount, and the rate of insurance are ascertained or understood and the premium paid if demanded.' " (*Devers v. Prudential Property & Casualty Insurance Co.* (1980), 86 Ill. App. 3d 542, 544, quoting *Cottingham v. National Mutual Church Insurance Co.* (1919), 290 Ill.

26, 32.) Further, such a contract may be oral. (*Devers*, 86 Ill. App. 3d at 544; see also 12A J. Appleman, Insurance Law & Practice §7229, at 162-63 (rev. 1981).) In addition, " '[i]n a preliminary contract it will be presumed that the parties contemplate such form of policy containing such conditions and limitations as are usual in such cases or have been used before between the parties.' " *Devers*, 86 Ill. App. 3d at 544, quoting *Cottingham*, 290 Ill. at 33.

The court in *Devers* quoted the United States Supreme Court in *Eames v. Home Insurance Co.* (1877), 94 U.S. 621, 24 L. Ed. 298, where the Court stated:

"If no preliminary contract would be valid unless it specified minutely the terms to be contained in the policy to be issued, no such contract could ever be made, or would ever be of any use. The very reason of sustaining such contracts is, that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted." (*Eames*, 94 U.S. at 629, 24 L. Ed. at 301, quoted in *Devers*, 86 Ill. App. 3d at 545.)

*Devers* also provides that whether or not a contract for insurance was formed is a factual determination that should be made in light of all the evidence and the trial court's assessment of the credibility of the witnesses. *Devers*, 86 Ill. App. 3d at 547.

The evidence in the instant case provides that Zannini proposed to be insured and Reliance agreed to insure him under a tenant's policy. Further, the subject of the insurance, including the scheduled jewelry, was agreed to by Zannini and Reliance, through its agent, Nesslar. Plaintiffs' evidence also showed that the amount and the rate of insurance were understood by Zannini and Nesslar. The evidence showed that the premium was not paid and had not been demanded before Zannini suffered his loss. Accordingly, the weight of evidence shows that

a preliminary contract of insurance was formed between Reliance and Zannini, and that the contract included coverage for the scheduled jewelry.

In addition, because Nesslar was speaking for Reliance, Nesslar's failure to forward to Reliance the schedule for personal property does not void the binder of insurance. An insurer can speak only through its representatives. The words of a representative who · speaks to a potential insured are " 'those of the insurer,' " and the insurer is bound by the representative's words. *Armstrong v. United Insurance Co. of America* (1981), 98 Ill. App. 3d 1132, 1144, quoting 12A J. Appleman, Insurance Law & Practice §7242, at 241 (rev. 1981).

In *State Farm Mutual Automobile Insurance Co. v. Oss* (1984), 127 Ill. App. 3d 119, an agent of State Farm orally bound coverage for the defendants. However, that the oral binder was limited to a 30-day period and was conditioned on the payment of a premium deposit was not communicated to the defendants. In addition, State Farm failed to properly process the defendants' application during the binder period. Defendants then suffered a loss and made a claim outside of the 30-day period.

The trial court found and the appellate court agreed that a contract of insurance had been made between the parties. The trial court, however, found that the contract did not extend beyond the 30-day binder period, and therefore held that State Farm did not owe coverage to the defendants. The appellate court reversed, stating that because the restriction on the binder was not communicated to defendants, and because the parties contemplated a written contract of insurance which was not consummated "through no fault of the insureds," State Farm could not deny coverage. *Oss*, 127 Ill. App. 3d at 123.

Further, the Illinois appellate court, citing this court's decision in *German Fire Insurance Co. v. Gueck* (1889), 130 Ill. 345, 350, stated in *Beddow v. Hicks* (1940), 303 Ill. App. 247:

> "Where an agent is authorized to act, and through his mistake or fraud, the policy fails to express the real contract between the parties, or, if by inadvertence, negligence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, there is no doubt as to the power of the court of equity to grant relief by reformation of the contract." *Beddow*, 303 Ill. App. at 257-58.

See also 17 Couch on Insurance 2d §66:42, at 320 (rev. 1983).

The trial court in the instant case found that "there was no meeting of the minds" between Zannini and Reliance for inclusion of the jewelry coverage. However, because we hold that the evidence shows that Nesslar was acting as the agent of Reliance when he bound coverage for the jewelry, the trial court's conclusion that the mistake of Nesslar in failing to forward the schedule to Reliance was the mistake of Zannini is manifestly against the evidence. See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed and this cause is remanded to the circuit court for further proceedings.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*