MID-AMERICA BANK AND TRUST COMPANY, Adm'r of the Estate of David Struempf, a Disabled Adult, Plaintiff-Appellee, v. COMMERCIAL UNION INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant and Separate Appellee (Evelyn K. Almeter, Ex'x of the Estate of James K. Almeter, Third-Party Defendant-Separate Appellant).

Fifth District   No. 5—90—0082

Opinion filed February 14, 1992.

Michael J. Pitzer, John J. Hartung, and Anne M. Oldenburg, all of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellant Commercial Union Insurance Company.

Allan M. Goodloe, Jr., and Daryl G. Clarida, both of Thompson & Mitchell, of Belleville, for appellant Estate of James K. Almeter.

Edward J. Kionka, of Carbondale, Jerald J. Bonifield, of Belleville, and G. Patrick Murphy, of Winters, Brewster, Murphy, Crosby & Patchett, of Marion, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

This is an appeal of a verdict against an insurance company in a case brought for negligence and for bad faith in refusing to settle a claim within the policy limits.

A truck hit a 13-year-old boy; he suffered brain damage. The truck was insured by Commercial Union under a policy that had limits of $50,000 per person and $100,000 per occurrence. Plaintiff's attorney sent a letter offering to settle for the policy limits. The offer remained open but was never accepted.

Commercial Union hired third-party defendant as its lawyer. On the advice of Commercial Union, and because of the possibility of damages exceeding the policy limits, the owner of the truck hired his own attorney.

Plaintiff, almost three years later on May 3, 1980, again offered to settle for $50,000. The third-party defendant instead offered $30,000, "take it or leave it," but did not tell the truck owner that he was going to offer this amount. Plaintiff was offended and withdrew all offers.

Six days later, third-party defendant offered to pay $50,000, stating that he always had had authority to settle for that amount. Plaintiff refused to accept the offer and the case was tried. A jury awarded plaintiff $911,536.50, an amount in excess of the coverage.

Thereafter, the owner of the truck settled with plaintiff. As part of that settlement, he assigned to plaintiff all claims he had against

Commercial Union in exchange for plaintiff's covenant not to execute the $911,536.50 judgment against him.

Plaintiff, then, sued Commercial Union for negligence and for the tort of bad faith in settling the original claim.

Commercial Union filed a third-party complaint against its lawyer, third-party defendant, whose estate has since been substituted, seeking indemnity and contribution. A jury awarded plaintiff $686,536.00, being the unpaid balance of the previous judgment, and also found Commercial Union to be 75% at fault and third-party defendant 25% at fault. The circuit court entered judgment and also awarded attorney fees and costs and ordered interest assessed against Commercial Union and third-party defendant at 9%, to be computed from December 3, 1983, for a total judgment of $1,099,791.95.

Both Commercial Union and third-party defendant make several arguments on appeal. We need only consider four: (1) that the circuit court erred by denying Commercial Union's motion for directed verdict; (2) that the circuit court erred by dismissing Commercial Union's indemnity claim; (3) that the circuit court erred by allowing certain expert testimony; and (4) that the circuit court erred in awarding post-judgment interest. We affirm in part, vacate in part and remand with directions.

Commercial Union first argues that the circuit court erred in denying its motion for directed verdict. We disagree and affirm.

A court properly grants a directed verdict when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand" (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14), and in considering the motion for directed verdict, the opponent is entitled to the benefit of all reasonable inferences that may be drawn from the evidence. (*Wallis v. Villanti* (1954), 2 Ill. App. 2d 446, 120 N.E.2d 76.) Having examined the evidence and inferences to be drawn therefrom, we cannot say that the evidence so overwhelmingly favored Commercial Union that no verdict for plaintiff could ever stand.

There is evidence in the record from which a jury could infer that Commercial Union acted negligently or in bad faith. Plaintiff's letter to the owner of the truck in July 1977 stated, "[w]e want to indicate to you that we would settle this case now for the amount of the insurance policy limits, even though the injuries in this case may justify a jury verdict in excess of the average policy." Eight days later, Commercial Union's claims adjuster reported to the company that, "this case *** has a value of upward to $1,000,000." The adjuster also indi-

cated that the chance of losing exceeded 10%, and he recommended that Commercial Union increase its reserve to $50,000.

A memo dated October 19, 1977, from the branch claims manager to the claims supervisor, stated in part:

> "The next thing I want done and I want it done immediately, is to acknowledge receipt of the lawyer's lien letter wherein he makes policy limits demand and advise him that we cannot give consideration to his policy limits demand at this time because we have no information in our file in regards to any specials or any medical reports in our file to indicate what the boy's injuries are. I think we pretty well know what the injuries are but I think we can put the lawyer off on his policy limits demand so that we are not in bad faith by telling him that we have nothing to support his policy limits demand."

This memo also recognized the possibility of a million-dollar verdict, that there was at least a 30% to 40% chance of losing, and gave authority to settle for $50,000.

Commercial Union argues that it offered to pay the policy limits, and six days later plaintiff refused that offer, there being no change of circumstances during that six-day period that would justify refusal, and therefore, plaintiff failed to prove a cause of action. We disagree. Commercial Union's argument asks us to focus only on that six-day period but to ignore the three-year period wherein plaintiff had an offer to settle outstanding. This we cannot do, because this three-year period is relevant, since it, together with the above memoranda and the statement, "30,000, take it or leave it," is the very essence of plaintiff's claim.

■■ ■ In negotiating settlements in which recovery may exceed policy limits, the insurer must give the interest of the insured consideration at least equal to its own. (*Cernocky v. Indemnity Insurance Co.* (1966), 69 Ill. App. 2d 196, 207, 216 N.E.2d 198, 204; *Edwins v. General Casualty Co.* (1979), 78 Ill. App. 3d 965, 397 N.E.2d 1231.) A cause of action against an insurer exists if the insurer's refusal to settle a claim within the policy limits amounts to negligence, or bad faith (*Cernocky*, 69 Ill. App. 2d 196, 216 N.E.2d 198), and when it does, the insurer may be held liable for the entire judgment entered against the insured and cannot complain of its amount. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.) In the case at bar, Commercial Union was aware of the offer, the extent of the injury, the possibility of bad faith, the possible personal liability of the owner of the truck, and the risk of excess liability if the case were tried. For almost three years there was a clear opportunity to

settle within the policy limits, but Commercial Union refused. We conclude that the circuit court properly denied the motion for directed verdict.

■ The second argument we consider is whether the circuit court erred in dismissing Commercial Union's indemnity claim. Commercial Union argues that it is entitled to indemnity from third-party defendant based on vicarious liability. We, however, agree with *American National Bank & Trust Co. v. Bransfield* (1991), 216 Ill. App. 3d 494, 576 N.E.2d 1013, which held that "the effect of the Contribution Act [(Ill. Rev. Stat. 1989, ch. 70, par. 302)] was to supersede implied indemnity actions based upon vicarious liability." (216 Ill. App. 3d at 500, 576 N.E.2d at 1017.) Therefore, the circuit court properly dismissed Commercial Union's indemnity claim.

We next address whether the circuit court erred by allowing testimony of an expert who had been called as a witness by the third-party defendant. On direct examination, the expert was asked his opinion on proximate cause, third-party defendant intending thereby to prove that the proximate cause was the handling of the claim by Commercial Union. Commercial Union objected on these grounds, asserting that the expert had stated in a prior deposition that he had no opinions with respect to Commercial Union, that the expert had not been retained to evaluate the conduct of Commercial Union, and that no effort had been made to supplement previous expert discovery. The objection was sustained.

Plaintiff, on cross-examination, asked the expert whether it was his opinion that Commercial Union had mishandled the settlement negotiations. Commercial Union's objection was overruled. The expert then testified that it was his "professional opinion that Commercial Union had fouled up the handling of the claim before [May 3, 1980]." Commercial Union claims that this statement went beyond the scope of third-party defendant's direct examination and was also a violation of Supreme Court Rule 220 (134 Ill. 2d R. 220), in that this opinion had never been disclosed. This testimony, indeed, was both beyond the scope of direct examination and a violation of Rule 220 and was erroneously admitted.

■ Paragraph (d) of Rule 220 limits the scope of an expert's testimony to opinions expressed in response to discovery. (134 Ill. 2d R. 220 (d).) Plaintiff's questioning on a matter not disclosed in discovery, even though the expert was not its witness, circumvents the purpose of the rule, *i.e.*, "to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries." (134 Ill. 2d R. 220, Committee Comments, at 182.) Clearly, third-party defendant could

not elicit this testimony from his expert regarding Commercial Union, because it had not been disclosed. Although it is true in the strict sense that plaintiff was not a party to the third-party claim and, therefore, might not be considered Commercial Union's "adversary" in Commercial's claim against the third-party defendant, and although the rule speaks of "direct" testimony, and this was cross-examination, the fact still remains that plaintiff was Commercial's adversary in the case in which the third-party claim was brought. In a large sense, however, the test for admissibility should not depend upon the formal alignment of the parties, but rather should be determined by whether the undisclosed opinion is sought to be admitted against the party who has relied upon Rule 220 and who claims the benefits thereof. Permitting plaintiff to elicit this testimony from third-party defendant's expert was erroneous, because that testimony was admitted against Commercial Union, the party who was to benefit from the exclusion of expert opinions not disclosed under Rule 220. Therefore, the circuit court erred in allowing cross-examination which deprived Commercial Union of the benefits and protections afforded by the Rule 220.

We must now consider, however, whether that error requires reversal. The question, then, is whether the outcome would have been the same had the circuit court correctly sustained Commercial Union's objection. Our review of the record establishes that Commercial Union's liability is not exclusively dependant upon that evidence, but rather is supported by other evidence in the record. We cannot say, however, that had that testimony been excluded, the apportionment of fault between Commercial Union and third-party defendant would have been the same, for it is impossible to determine whether this testimony diminished or increased the liability of either third-party defendant or Commercial Union, or had any effect at all. We, therefore, vacate and remand the third-party claim for retrial on the apportionment of fault only.

■ Lastly, we consider whether it was proper for the circuit court to award post-judgment interest from December 3, 1983, against both Commercial Union and third-party defendant.

The circuit court followed the statute when it awarded interest. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1303.) The statute provides in pertinent part:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate,

from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." Ill. Rev. Stat. 1989, ch. 110, par. 2—1303.

A "judgment" for purposes of section 2—1303 has been defined as "a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 119, 382 N.E.2d 1217, 1219.

Commercial Union argues that the above statute does not apply to this case, because the issues in the case at bar are different from those presented in the underlying case between plaintiff and the truck owner, and that the rights and liabilities of Commercial Union were not fixed until the jury rendered its verdict in this case. They argue further that the covenant not to execute that plaintiff gave to the truck owner waived all rights plaintiff had against the truck owner, and because the truck owner can no longer be liable for any interest, neither can Commercial Union.

Commercial Union relies on *Industrial Indemnity Co. v. Vukmarkovic* (1990), 205 Ill. App. 3d 176, 562 N.E.2d 1073, *appeal denied* (1991), 136 Ill. 2d 544, 567 N.E.2d 332, in asserting that the post-judgment interest statute does not apply. We disagree. In *Industrial Indemnity*, a judgment was obtained against an insured and an insurance company that had agreed to defend the case. After receiving the policy limits from that insurance company, plaintiff sought to collect his judgment against the insured by garnishing a policy issued by Industrial Indemnity. Industrial Indemnity filed a declaratory judgment action. In deciding that Industrial Indemnity was not liable for post-judgment interest, the appellate court noted that Industrial Indemnity was not a party defendant to the prior lawsuit and stated that "the post-judgment interest statute should not be expanded to require Industrial, a 'stranger' to the personal injury judgment, to indemnify Vukmarkovic." (*Industrial Indemnity*, 205 Ill. App. 3d at 191, 562 N.E.2d at 1083.) Although Industrial indeed was a "stranger" to the personal injury judgment there, we find that Commercial Union was not a "stranger" to this personal injury lawsuit. Commercial Union agreed to and was contractually obligated to defend the owner of the truck. Commercial Union rightfully investigated the claim, knew of the liability, acknowledged it in internal memoranda, and participated in settlement negotiations, the failure of which was largely their fault, hardly the acts of a "stranger," or an interloper.

If an insurance company commits fraud, negligence, or bad faith in refusing to settle a claim within the policy limits, it may be liable

for the full amount of the judgment, regardless of policy limits (*De-Graw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 37-38, 351 N.E.2d 302, 311), and we see no reason why in this case, a tort action, that judgment should not include interest. Here, the covenant not to execute did not extinguish the claim but was instead part of the consideration for assignment. Had there not been a covenant not to execute, plaintiff would still be entitled to recover interest, and that interest would have come from either the owner of the truck or from Commercial Union or both. We, therefore, affirm the award of interest against Commercial Union.

While we find Commercial Union is liable for interest, we conclude that the circuit court erred in ordering third-party defendant to pay interest, because he was not a party to the original action and was indeed a "stranger" to the underlying cause of action. (See *Industrial Indemnity*, 205 Ill. App. 3d 176, 562 N.E.2d 1073.) The only judgment against third-party defendant was rendered November 2, 1989, and his rights and liabilities were not fixed until that time. On remand of the third-party claim, then, if third-party defendant is found to be liable to Commercial Union for contribution, third-party defendant will be liable for interest from November 2, 1989, only.

Affirmed in part; vacated in part and remanded with directions.

LEWIS and RARICK, JJ., concur.