CASEY STEVENSON, as Assignee of August Samkow, Plaintiff-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 1—92—0064

Opinion filed December 22, 1993.

Ronald S. Fishman, of Fishman & Fishman, Ltd., of Chicago, for appellant.

Michael Resis and Dennis A. Marks, both of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Casey Stevenson (plaintiff), assignee of State Farm Fire & Casualty Company's insured, appeals from a finding for State Farm in an action where it was alleged that State Farm acted in bad faith in connection with the settlement of an underlying action for personal injury between plaintiff and August Samkow (insured).

In a bench trial, the court found for State Farm at the close of

plaintiff's case on a motion pursuant to section 2—1110 of the Illinois Code of Civil Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 2—1110.

The primary issue in this case is the course of conduct required of State Farm where its insured is alleged to have committed an intentional tort which would have placed him beyond the protection of the homeowner's policy issued by the company.

Plaintiff argues on appeal that State Farm did not negotiate in good faith in the underlying personal injury action and that the trial court used an incorrect standard as to the responsibility of an insurance carrier to its insured. Plaintiff suggests that an insurance carrier must give "equal consideration" to the interests of its insured and may not refuse to provide funds for a reasonable settlement merely because the coverage is "fairly debatable." Plaintiff further objects to the process followed by the trial court in consideration of the section 2—1110 motion. Ill. Rev. Stat. 1989, ch. 110, par. 2—1110.

We affirm and find that the trial court properly considered all the evidence offered by plaintiff, weighed the evidence and properly concluded that plaintiff had not established a *prima facie* case.

Although each participant to the events of July 20, 1980, has provided a number of versions, it appears that at 1:30 a.m. plaintiff, then 16 years old and with a high blood-alcohol level, was walking down the street when he came upon the insured, who was then approximately 65 years old and had just left a tavern where he had consumed several beers and shots of liquor. After the two men exchanged words, the insured discharged a pistol which he was carrying in his pocket, wounding plaintiff in the leg.

Plaintiff brought an action against the insured for his injuries, alleging in his complaint a count for intentional tort and another count sounding in negligence. State Farm recognized that under the doctrine of *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 197-99, 355 N.E.2d 24, a conflict existed between it and its insured, *i.e.*, a finding in plaintiff's favor on count I (intentional tort) would place the event beyond the coverage provided in the homeowner's policy. When faced with such a conflict, a carrier is required to provide independent counsel for its insured. *Peppers*, 64 Ill. 2d at 197-99.

State Farm advised its insured that he had a right to select an attorney of his choice and that State Farm would reimburse him for the reasonable cost of defense by the attorney or, in the alternative, State Farm would select and pay for independent counsel to represent him.

The insured retained his own attorney (Norman Nelson, Jr.), and State Farm also engaged Steven Sward of the law firm of Rooks,

Pitts, Fullager & Poust to defend him under a reservation of rights under the policy which noted that the lawsuit "alleges that you, the defendant, did unlawfully and wilfully and intentionally commit an assault & battery upon the plaintiff."

State Farm advised Sward that it would be willing to "talk settlement" with plaintiff, but also stated that "plaintiff should be made aware that State Farm might not be required to pay anything if the shooting was intentional." Otherwise, State Farm did not instruct Sward or his firm as to the conduct of the defense, nor did it interfere with defense strategy. Neither the insured nor his personal attorney objected to Sward and his law firm's representation on his behalf.

The case was assigned to trial. During a pretrial conference on April 22, 1983, plaintiff offered to settle the case for $55,000. Sward informed State Farm that if it was willing to settle, an amount in the range of $25,000 "appears appropriate." However, State Farm had determined that this was a "defend" file, preferring to try the case if it could not settle for its costs of defense and the costs of a possible declaratory judgment which it estimated in the range of $6,000 to $7,000.

State Farm apparently reached its decision to try the case for several reasons: (1) a belief that the shooting was intentional and not covered by the policy; (2) it was advised by Nelson that the case was not worth anything near the policy limits of $100,000; (3) it determined that there was a 50-50 chance of the verdict in the insured's favor if the jury perceived him as a "terrified elderly person" who reacted fearfully to the taunting of an intoxicated youth; and (4) it concluded that plaintiff's attorney would only be able to establish special damages in the range of $12,000 to $15,000, and in no event would a verdict be likely to exceed $40,000 to $50,000. Consequently, State Farm held to a settlement offer of $3,000 although it considered increasing the amount to $5,000.

Plaintiff declined to accept the sum offered in settlement and thereafter plaintiff's attorney and Nelson entered into a settlement agreement which provided that a judgment would be entered against the insured for $87,500 and that plaintiff would not cause execution to issue on the judgment or proceed against the insured's personal assets. The insured was required to assign to plaintiff all causes of action he had against State Farm. *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 947, 338 N.E.2d 912.

The judgment order does not specify whether the coverage was based on count I (intentional act) or count II (negligence). Moreover, plaintiff did not amend his complaint to delete the intentional tort count.

Plaintiff then sought to garnish State Farm to recover on the consent judgment entered against the insured. The trial court entered summary judgment in favor of State Farm on grounds that the insured had breached the terms of the homeowner's policy by entering into a settlement with plaintiff without State Farm's permission and that garnishment would not lie. The trial court was affirmed in *Stevenson v. Samkow* (1986), 142 Ill. App. 3d 293, 491 N.E.2d 1318.

Thereafter, plaintiff filed the case which we now consider. The trial court granted State Farm's motion for judgment at the close of plaintiff's case, finding that plaintiff had failed to meet the burden of proving State Farm had acted in bad faith. The court also concluded that: (1) there was a "slim possibility" that the jury would have returned a verdict in excess of the policy limits of $100,000; (2) the insured's liability to plaintiff was not "clear cut" and a jury could have easily found for the insured; and (3) the question of coverage was "extant throughout" and "fairly debatable."

The court further noted that State Farm provided the insured with a defense through independent counsel (Sward) and the record also shows it paid for the services of the insured's personal attorney (Nelson).

Plaintiff contends that State Farm acted in bad faith by placing its own economic interests above those of its insured when it refused to settle with plaintiff for an amount higher than the original $3,000 offer. Plaintiff cites *Browning* (33 Ill. App. 3d 943, 338 N.E.2d 912) and *Mid-America Bank & Trust Co. v. Commercial Union Insurance Co.* (1992), 224 Ill. App. 3d 1083, 587 N.E.2d 81, which both held that an insurance carrier must give its insured's interest consideration equal to its own in negotiating settlements on behalf of its insured.

Both of these cases and others similarly holding must be limited to their facts. They relate only to situations where the recovery at trial may exceed the policy limits established in the insurance policy issued by defendant. In *Mid-America*, for example, the plaintiff was prepared to settle his claim for the policy limits of $50,000; however, the offer was withdrawn on the eve of trial after being held open for three years. Subsequently, a jury awarded plaintiff over $900,000 and the defendant assigned his claim of "bad faith dealing" to the plaintiff. The court determined that an insurance company may conduct itself in such a manner that it may be liable for all that its insured may be called upon to pay where it has not taken advantage of opportunities to settle the matter upon reasonable terms. *Mid-America*, 224 Ill. App. 3d at 1087-88.

This remains the rule in Illinois, and plaintiffs' counsel often

take great care to make it clear that they are willing to settle the case for the policy limits although such an amount would be substantially less than they might recover against a defendant with substantial personal assets. However, it is not the rule where the question of insurance coverage is at issue. Where a carrier can reasonably examine a set of facts and determine that the incident or occurrence which is the substance of the underlying controversy is not one contemplated by the policy, then it does not owe the same kind of duty as that required by *Browning* and *Mid-America.*

In the instant case, the trial court found that the issue of insurance coverage was fairly debatable; therefore, State Farm could exercise discretion in a case dealing with disputed coverage that it could not have exercised in a matter involving liability which exceeded the policy limits.

Closer to the facts of our case is *Mowry v. Badger State Mutual Casualty Co.* (1986), 129 Wis. 2d 496, 385 N.W.2d 171, where coverage was at issue. The Wisconsin court employed the "fairly debatable" test as a hallmark of the insurance company's bad faith. Plaintiff argues that such a standard is appropriate for Wisconsin, which provides for a bifurcated trial, determining issues of coverage before consideration of the underlying cause of action. We believe that the test used by that court is appropriate whatever the procedure might be in deciding the issues. To be sure, a carrier may be called upon to pay a claim after it has wrongfully or incorrectly determined that there is no coverage under its policy; however, that is a business decision that it ought to be allowed to make. In the *Browning* and *Mid-America* situation, the carrier reasonably knows that it will be required to pay a part of the plaintiff's damages and will be held liable for all of the plaintiff's damages if the carrier declines to pay less than the total coverage where the verdict may exceed the policy limits.

But what standards can we employ where the carrier may not be required to pay any of the amount due plaintiff because of noncoverage?

Contrary to plaintiff's contentions, the trial court complied with section 2—1110 of the Code of Civil Procedure, which establishes the standard in a bench trial when a defendant moves for a directed finding or judgment at the conclusion of plaintiff's case. Section 2—1110 provides:

> "In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110.)

(See also *Zannini v. Reliance Insurance Co.* (1992), 147 Ill. 2d 437,

448-49, 590 N.E.2d 457.) Under such motions, the trial court determines in the first instance whether the plaintiff has made out a *prima facie* case as a matter of law. (*Zannini*, 147 Ill. 2d at 449; see *Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 34, 518 N.E.2d 1374 (defendant's motion for directed verdict properly granted despite trial court's failure to state the basis of its decision), citing *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155, 407 N.E.2d 43.) If the plaintiff has not made out a *prima facie* case, the defendant's motion will be granted. (*Zannini*, 147 Ill. 2d at 449.) If the trial court determines that the plaintiff has made out a *prima facie* case, the trial judge as the finder of fact will then weigh the plaintiff's evidence, including any evidence favorable to the defendant, which may result in the negation of some of the evidence necessary to establish plaintiff's *prima facie* case. (*Zannini*, 147 Ill. 2d at 449; see *Prevendar*, 166 Ill. App. 3d at 34, citing *Kokinis*, 81 Ill. 2d at 155.) If this occurs, the defendant's motion should be granted and judgment entered in its favor. *Prevendar*, 166 Ill. App. 3d at 34, citing *Kokinis*, 81 Ill. 2d at 155.

■ In considering the standard of review, plaintiff incorrectly states that a reviewing court should apply the same standard as the trial court in considering whether defendant's motion should have been granted. An appellate court does not function as a secondary trier of fact to reassess the credibility of witnesses or reevaluate evidence. Consequently, a reviewing court considers questions of credibility as resolved in favor of the prevailing party and draws from the evidence all reasonable inferences in support of the judgment. (*Village of Niles v. City of Chicago* (1990), 201 Ill. App. 3d 651, 678, 558 N.E.2d 1324; *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410, 454 N.E.2d 723; see *Prevendar*, 166 Ill. App. 3d at 35.) A reviewing court will not disturb the trial court's decision unless contrary to the manifest weight of the evidence. (*Zannini*, 147 Ill. 2d at 449.) Manifest weight concerns the weight of the evidence which is "clear, plain, and indisputable." *Prevendar*, 166 Ill. App. 3d at 35.

■ The trial court properly granted State Farm's motion since plaintiff failed to establish a *prima facie* case of bad faith. The trial court reached its decision after hearing evidence and arguments for three days and after receiving and reviewing a trial brief, a written motion for judgment or directed finding under section 2—1110 and a transcript of the proceedings. Based on this information, the trial court found that State Farm did not act in bad faith in refusing to settle above $3,000 for the reasons stated.

Moreover, the question of coverage was fairly debatable since the trial court found that the insured's liability to plaintiff was not "clear

cut," especially since the insured could have been acting in self-defense against plaintiff, an intoxicated 16-year-old male who exchanged words with the insured late at night.

■ Finally, the trial court found that State Farm acted properly in defending the insured. When State Farm recognized that it had a conflict of interest with the insured in the underlying action, it agreed to undertake the insured's defense under a reservation of rights. State Farm satisfied its obligation to the insured to provide a defense by reimbursing him for the cost of such defense. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 152, 384 N.E.2d 335; *State Security Insurance Co. v. Globe Auto Recycling Corp.* (1986), 141 Ill. App. 3d 133, 137, 490 N.E.2d 12.) State Farm was not obligated to initiate negotiations to settle the case. (*Kavanaugh v. Interstate Fire & Casualty Co.* (1975), 35 Ill. App. 3d 350, 356, 342 N.E.2d 116.) Nor did State Farm's refusal to settle within the policy limits render it liable to the insured or to plaintiff, as his assignee, because coverage was fairly debatable. *Mowry v. Badger State*, 129 Wis. 2d at 517, 385 N.W.2d at 181; see *Stevenson v. Samkow*, 142 Ill. App. 3d at 298, citing *Kavanaugh*, 35 Ill. App. 3d 350.

Affirmed.

TULLY, P.J., and CERDA, J., concur.