**TRANSPORT INSURANCE COMPANY, INC., Plaintiff–Appellant, Cross–Appellee,**

v.

**POST EXPRESS COMPANY, INC., Defendant–Appellee, Cross–Appellant.**

Nos. 96–3376, 96–3481.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1997.

Decided March 16, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied April 14, 1998.*

* Judge Cummings took no part in the decision.

Thomas H. Neuckranz, Patrick F. Klunder, James K. Horstman (argued), Alton C. Haynes, Edward R. Moor, Williams & Montgomery, Chicago, IL, for Plaintiff–Appellee.

Weston W. Marsh, Kenneth A. Peterson (argued), Todd J. Ohlms, Freeborn & Peters, Chicago, IL, Anthony G. Scariano, Daniel M. Boyle, Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for Defendant–Appellant.

Jane W. Grover, Stamos & Trucco, Chicago, IL, for Norfolk & Western Railway Co.

Gregory M. Tobin, Pratt, Bradford, Tobin & Alexander, East Alton, IL, Stephen E. Garcia, Hopkins & Sutter, Chicago, IL, for Alfonzo T. Frazier, Jr.

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Alfonzo Frazier was injured while unloading cargo from a flatbed tractor-trailer owned by Post Express Company and operated by its employee Thomas Fuller. The cargo (four railroad wheel and axle assemblies called bogies) was heavy and the unlading process complex. Frazier had to attach cables to one bogie at a time. A crane operator would lift the bogie a few inches, after which Frazier would get off the trailer, Fuller would drive the trailer out from under the dangling bogie, and the crane operator would move the bogie to the ground and release the cables. Three bogies were unloaded without incident. After Frazier attached the cables to the last bogie, Fuller pulled forward before Frazier left the trailer.

To avoid colliding with the suspended bogie, Frazier rolled off the flatbed, fell five feet, and landed on his back.

■ Frazier sued his employer, Norfolk & Western Railway, under the Federal Employers' Liability Act. The railroad filed a third-party action against Post Express, which tendered the defense to its liability carrier, Transport Insurance Company. Transport assumed the defense under protest, observing that Post Express had not notified it until two years after the accident, when Frazier filed suit, despite a clause in the contract providing:

> You must promptly notify us or our agent of any accident or loss. You must tell us how, when, and where the accident or loss happened. You must assist in obtaining the names and addresses of any injured persons and witnesses.

The jury in Frazier's FELA suit concluded that both Post Express and the railroad had been negligent. It set damages at $2.3 million, of which Post Express's share is 90%, or $2,070,000. Transport Insurance's policy limit is $1 million, leaving Post Express responsible for the remainder. In this diversity suit, Transport Insurance seeks a declaratory judgment that Post Express must bear the full loss, while by counterclaim Post Express demands that the insurer cover the whole verdict. After the judge concluded (following a bench trial) that Post Express had satisfied the notice requirement in the policy, a second jury trial began. This jury concluded that Transport Insurance had acted in bad faith when defending Post Express against Frazier's claim and therefore must satisfy the entire judgment. But on post-trial motions the judge ruled that an insurer with a "fairly debatable" defense to coverage cannot be responsible for bad-faith conduct of the defense in the underlying litigation. Both sides have appealed; we begin with the question whether the two-year delay in notice lets the insurer off the hook.

Fuller notified Greg Postma, Post Express's president, of the accident the day it happened. Fuller told Postma that he thought Frazier had the wind knocked out of him but was otherwise uninjured. Armed with this knowledge, Postma did—nothing.

Fuller was no physician, a five-foot fall onto a concrete surface can do serious injury (Frazier is not a movie stunt man, and the fall had not been rehearsed), and a prudent manager would have inquired to see whether Frazier sought medical or legal aid (as it happens, Frazier did both). Insurers need swift notice so that they can preserve evidence, interview witnesses (Frazier, Fuller, and the crane operator) while memories are fresh, and monitor the victim's medical care and recovery. Deprived of the ability to do these things, Transport Insurance could have argued that Postma's failure to give notice on the date of the accident is dispositive. Postma testified that *he* deemed the accident trivial (and the district judge believed him), but notice enables insurers to check for themselves. An uncontrolled five-foot fall cannot be assimilated to a scratched finger or a similarly petty event that is unlikely to yield a claim. Nonetheless, Transport Insurance accepts the district judge's conclusion that Post Express was not required to notify it when the accident occurred. What Transport Insurance does contend is that it should have received notice four months later, after an investigator working for Frazier's lawyer interviewed Fuller. Willingness to accept this delay is surprising; the lapse not only complicated the investigation and foreclosed any opportunity to make an early settlement offer, but also meant that Fuller was interviewed without the benefit of legal advice, and therefore was more likely to make unguarded statements. By treating the investigator's interview with Fuller as the event triggering the notice obligation, Transport Insurance set itself up for the response that the notice obligation falls on managers rather than truck drivers. Fuller never told Postma about the interview, so Postma was not in a position to tell Transport Insurance. (The investigator assured Fuller that the interview "did not involve Fuller or Post Express"; Fuller naively believed him.)

The district court wrote that a truck driver's knowledge of an accident is not imputed to management, and that only management's knowledge activated the contractual notice obligation. Transport Insurance denies that Illinois recognizes such a "truck driver rule" and submits that courts should use ordinary principles of agency, which allow firms to

decide for themselves who has what duties. Evidence shows that Post Express required its drivers to report accidents promptly and this, Transport Insurance shows, means that reporting was within Fuller's normal duties. Arguments pro and con about a "truck driver rule" versus "normal agency principles" seem to us beside the point—and not only because the "truck driver rule" articulated in cases such as *Citizens Casualty Co. v. L.C. Jones Trucking Co.*, 238 F.2d 369, 372 (10th Cir. 1956), says that the truck driver needn't notify *the insurer*, as opposed to the firm for which he works. These cases do not discuss the circumstances under which a driver's knowledge of an accident is imputed to management, let alone the question whether knowledge a driver gains off duty is imputed. (The interview took place at Fuller's home on a weekend.) Nor need we discuss that question, because Fuller promptly notified Postma about Frazier's fall.

Whatever accident-reporting obligations drivers normally possess were discharged. Postma had actual rather than imputed knowledge of the accident. He was then in a position to investigate, to require Fuller to report (or rebuff) any contacts by third parties, or to do both, though in the event Postma did neither. Although the visit by an investigator might have alerted Fuller that the accident had been more serious than he thought, Fuller had every reason to suppose that Postma already had taken whatever steps were in order. A notice clause may be good at inducing the insured to be candid; it is no cure for truck drivers' credulousness during a post-accident investigation.

Another reason why the to-and-fro about a "truck driver rule" strikes us as peculiar is that by emphasizing "normal agency principles" Transport Insurance implies that its clients are free to relieve truck drivers of reporting duties. If a motor carrier tells the drivers not to report accidents, that seems to be hunky dory with Transport Insurance. How can that be right? An insurer needs to learn about accidents, and requirements such as the one in the policy issued to Post Express oblige the insured as an entity to gather the necessary information. An insurer wants to receive notice and is indifferent to

how the insured gathers the information needed to give that notice. Not for a second do we believe that Transport Insurance *really* thinks that a motor carrier that deliberately arranges its affairs so that managers don't learn about accidents shucks any obligation to notify the insurer. Unless a notice clause requires insureds to gather information from their truck drivers, it fails in its function. So the clash between a "truck driver rule" and "normal agency principles" is artifactual; it demonstrates that Transport Insurance has advanced whatever argument might help it win today, without regard to the calamity that success would yield for insurers (itself included) tomorrow. All that need be said to resolve today's case is that Fuller actually notified Postma immediately after the accident, and that Transport Insurance has waived any argument that Postma had to notify it with equal dispatch. The notice clause thus falls out of the picture, and Transport Insurance is obliged to indemnify Post Express.

■ But for how much? The second jury found that Transport Insurance acted in "bad faith" when defending Post Express in Frazier's tort suit and therefore is liable for the full judgment, despite the policy limit of $1 million. Despite the use of the opprobrious "bad faith" language, this is a contractual claim informed by principles of negligence. See *In re New Era, Inc.*, 135 F.3d 1206, 1210 (7th Cir.1998) (Illinois law). Insurers operate under a conflict of interest; the policy limit drives a wedge between what is good for insurers and what is good for clients. Suppose the plaintiff seeks an award of $2 million, the policy limit is $1 million, and the probability of a verdict in the plaintiff's favor is 50%. An insurer concerned only about its own interests would offer only $500,000 to settle the case, because that is the expected value of the exposure it faces ($1,000,000 × 0.5). But if the insured is solvent (and thus good for the full verdict), the plaintiff will not accept less than $1 million in settlement ($2,000,000 × 0.5). Trial exposes the insured to an anticipated loss of $500,000 (the $1 million excess of the verdict over the policy limits, times the probability of a victory for the plaintiff). By settling the case at or within the policy limit, the insurer could insulate the client from this exposure. Most

states, of which Illinois is one, require insurers to devise a litigation strategy (and make settlement offers within the policy limits) as if the insurer bore the full exposure. That is to say, an insurer must give "its insured's interests at least equal consideration with its own when the insured is a defendant in a suit in which the recovery may exceed [the] policy limits." *Adduci v. Vigilant Insurance Co.*, 98 Ill.App.3d 472, 475, 53 Ill.Dec. 854, 424 N.E.2d 645, 648 (1st Dist.1981); see also *Kavanaugh v. Interstate Fire & Casualty Co.*, 35 Ill.App.3d 350, 356, 342 N.E.2d 116, 120 (1st Dist.1975). Intentional or negligent failure to avert a preventable excess judgment requires the insurer to bear the full loss—avoiding the injury to the client that is attributable to unsound litigation decisions. See *Twin City Fire Insurance Co. v. Country Mutual Insurance Co.*, 23 F.3d 1175 (7th Cir.1994) (Illinois law).

■ Evidence in this case permitted a rational jury to conclude that Transport Insurance gambled with its client's money. Transport Insurance played a risky strategy at trial. It conceded liability on behalf of Post Express but argued that the damages should not exceed $225,000. Frazier asked the jury for $2.3 million. Transport Insurance lacked a sound basis for this argument; its own lawyers estimated the probable recovery at $500,000 or higher (as did Norfolk & Western's lawyers). Frazier's demand was hefty, but a jury given a choice between an insupportably high award and an insupportably low award for someone concededly entitled to *some* award may choose the high one. See *Kasper v. Saint Mary of Nazareth Hospital*, 135 F.3d 1170, 1177–78 (7th Cir.1998). A lowball strategy may be attractive to an insurer because its own liability is capped at the policy limit; if the jury accepts the low figure, the insurer reaps the reward, and if it buys the high figure, the client suffers the loss. The jury in the bad-faith case sensibly could have concluded that Transport Insurance disregarded Post Express's interests when adopting a trial strategy designed to minimize its own likely outlay. Other evidence could have led the jury to decide in Transport Insurance's favor, but when reviewing a jury verdict we must take the evidence and all reasonable inferences in the

victor's favor, and in that light the evidence suffices. Transport Insurance contends that *Cramer v. Insurance Exchange Agency,* 174 Ill.2d 513, 221 Ill.Dec. 473, 675 N.E.2d 897 (1996), "eliminates any cause of action for bad faith in Illinois, other than an action for alleged bad faith failure to settle", but no such argument was made in the district court, a serious shortcoming, given Fed. R.Civ.P. 51 and the lack of a plain-error rule for jury instructions in civil cases. See *Deppe v. Tripp,* 863 F.2d 1356, 1361–62 (7th Cir.1988).

■ What led the district court to set aside the verdict was not doubt about the sufficiency of the evidence or the legal theory behind the claim but a conclusion that Illinois permits an insurer to throw its client's interests to the winds if the insurer has a "fairly debatable" defense to coverage—and the judge thought that its notice argument, although unsuccessful, was at least "fairly debatable". One decision in Illinois articulates a rule that an insurer need not settle a case while it has a respectable defense to coverage. *Stevenson v. State Farm Fire & Casualty Co.,* 257 Ill.App.3d 179, 195 Ill.Dec. 346, 628 N.E.2d 810 (1st Dist.1993). *Stevenson* agreed with a similar conclusion in *Mowry v. Badger State Mutual Casualty Co.,* 129 Wis.2d 496, 385 N.W.2d 171 (1986). Both *Mowry* and *Stevenson* addressed claims that, while attempting to determine its responsibility under the policy, the insurer bypassed an opportunity to settle on favorable terms. In each case the insured, represented by independent counsel, settled the case for consideration that included an assignment to the victim of whatever claim the insured may have had against the carrier. And in each case the court held that there was no such claim to assign, because an insurer need not pay until coverage has been established. Neither *Mowry* nor *Stevenson* dealt with an insurer's strategy that shifted risk to the insured; to the contrary, in each case the insured made a deal that eliminated any personal liability and attempted to shift everything to the pockets of the carrier. In *Stevenson,* for example, the insured shot the victim with a concealed handgun. The policy excluded intentional torts. The carrier paid for a defense against the victim's suit and offered to indemnify the insured if it should be determined that the shooting was unintentional, but the insured preempted this by a friendly settlement in which the victim abandoned any claim of an intentional tort, as part of a joint strategy to maximize the recovery from the insurer. No wonder that the Appellate Court in *Stevenson* thought that the insurer had not displayed indifference to its client's exposure; the case illustrated the opposite risk that a person represented by counsel who does not owe allegiance to the insurer will try to protect his client at the carrier's expense.

■ *Stevenson* and *Mowry* have a vital fact in common: in each case the insurer, after contesting coverage, arranged for the insured to be represented by independent counsel. When this happens, there is little need to protect the insured from the carrier, and a potential need to protect the carrier from the insured. *Stevenson* remarked that "a carrier is required to provide independent counsel for its insured" in these situations. 628 N.E.2d at 812. In *Mowry* Justice Steinmetz observed: "the duty to settle is not a contractual duty.... Rather it is a fiduciary duty which only arises when the insurer assumes the exclusive management and control of the insured's defense." 385 N.W.2d at 186 (concurring opinion). Transport Insurance did not authorize Post Express to hire its own conflict-free lawyer and conduct its own defense. Whether or not Illinois permits insurers to control the defense after denying coverage (and *Stevenson* said not), there can be no doubt that *if* the insurer controls the defense it must give the insured's exposure equal weight with its own. *Stevenson* and *Mowry* have no bearing on cases in which while denying coverage an insurer handles, and bungles, the defense. The district court therefore should have entered judgment for Post Express on the second jury's verdict.

REVERSED AND REMANDED.