In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3827

Jeffrey Meixell,

Plaintiff-Appellant,

v.

Superior Insurance Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-CV-3123--Richard Mills, Judge.

Argued April 7, 2000--Decided September 6, 2000

Before Bauer, Easterbrook, and Rovner, Circuit Judges.

Bauer, Circuit Judge.  On October 22, 1999, the district court dismissed Jeffrey Meixell's amended complaint with prejudice. Meixell appeals contending that the complaint sufficiently alleged that Superior Insurance Company engaged in bad faith for refusing to settle.

On July 5, 1995, Meixell was a passenger in Terry Whitworth's vehicle when it collided with a utility pole. No other vehicles were involved. The accident rendered Meixell a quadriplegic and caused him to incur medical bills in excess of the insurance policy limits. On August 30, 1995, Meixell sent his medical bills and records to Whitworth's insurance, Superior.

After review of the facts surrounding the accident and Meixell's injuries and damages, Superior sent a draft of $20,000 to Meixell along with a general release of all claims. On September 21, 1995, Meixell's attorney informed Superior that they would release Whitworth in exchange for the policy limits and a covenant not to sue. Meixell refused to give a general release to potential third parties. On October 12, 1995, Superior rejected the covenant not to sue and

asked for the return of the settlement draft. The opportunity to settle was not communicated to Whitworth.

On January 30, 1996, an attorney retained by Superior agreed to tender the $20,000 in exchange for the covenant not to sue Whitworth, withdrawing its demand for a general release. Meixell rejected the offer and filed suit against Whitworth, the Township of New Berlin, and Sangamon County on March 29, 1996. Two years later, New Berlin and Sangamon County settled for $1,400,000 in return for a covenant not to sue. On December 1, 1998, a jury returned a verdict against Whitworth for $4,537,791.38 and judgment was entered on the jury verdict for $3,137,791.28 after reduction for the monies paid by the co-defendants.

On December 14, 1998, Meixell was assigned this cause of action against Superior by Whitworth and filed suit based upon Illinois common law for breach of the duty of good faith owed by an insurer to its insured. The district court dismissed his amended complaint with prejudice. Meixell now appeals.

Motions to dismiss are reviewed de novo. Under Illinois law there is a duty on the part of the insured to give at least equal consideration to the insured's interests as it's own where the insured is a defendant in a suit in which the policy limits may be exceeded. Adduci v. Vigilant Insurance Co. Inc., 98 Ill.App.3d 472, 476, 424 N.E.2d 645 (1st Dist. 1981). Where the insurer fails to settle resulting in an excess judgment due to fraud, negligence or bad faith, the duty is breached. Id. The insurer may then be held liable for the full amount of the judgment irrespective of the policy limits. Id. Meixell must sufficiently show a breach of duty and demonstrate that the breach was the legal cause of the harm to the insured. Id. The court in Phelan v. State Farm Ins., 114 Ill.App.3d 96, 104, 448 N.E.2d 579 (1st Dist. 1983), determined that the plaintiff must allege sufficient facts to demonstrate why the offer of settlement after the deadline could not have been accepted. In dismissing the complaint, the district court found that Meixell could not show that Superior's conduct proximately caused the excess verdict.

Meixell's argument is that Superior breached its duty when it failed to convey his counteroffer to settle for the $20,000, the policy limits, and the covenant not to sue to Whitworth. Because

Superior rejected the offer to settle, Meixell believes that bad faith was demonstrated. Three months later however, Superior did offer to settle for the policy limits. When an insurance company offers to settle and is refused for no reason, it does not constitute bad faith. Without a showing of bad faith Meixell cannot state a valid cause of action on that basis. Brocato v. Prairie State Farmers Ins. Assoc., 166 Ill.App.3d 986, 520 N.E.2d 1200 (4th Dist. 1988).

In Adduci the plaintiff rejected a settlement offer because it came 40 days after their self-imposed deadline. Adduci, 424 N.E.2d at 647. The court found that these allegations were insufficient as a matter of law to demonstrate that the Insurer acted in bad faith and breached its duty to the insured Id. While Superior initially rejected Meixell's offer in October, they returned three months later with an offer to settle. Meixell rejected it. Meixell offers no explanation as to why he could not accept the offer of settlement or how he would be prejudiced if he had accepted the offer. Meixell claims that once he returned the settlement draft on November 9, 1995, negotiations ceased. At no time did Meixell's attorney establish a timeline for the settlement negotiations. Superior believed that negotiations were ongoing and finally offered to settle on Meixell's terms. It was less than two months since their last exchange, and before Meixell filed suit.

Finally, Meixell has not established that Superior failed to protect Whitworth's interests. Superior's conditional offer of the policy limits and a general release was in the best interests of Whitworth. By responding with a counteroffer, Meixell demonstrated that he believed the negotiation process was ongoing. Although Meixell did not like the initial terms of the offer or that Superior at first rejected his offer, at no time was Whitworth harmed by Superior's actions. Meixell's failure to present evidence that Superior placed its interests above Whitworth's left the district court with no other option than to dismiss the complaint.

Superior can not be accused of bad faith for failing to settle. The allegations of the complaint do not show why the offer to settle was not accepted on January 30, 1996 or that Superior failed to protect Whitworth's interests. The district court correctly dismissed the amended complaint with prejudice.
Affirmed.

ROVNER, Circuit Judge, dissenting. This case is before us on appeal from the grant of a motion to dismiss. In affirming, the majority necessarily holds that it is impossible for Meixell to prevail under any set of facts that could be proven consistent with the allegations. Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997). Because I think the complaint is sufficient to state a claim under Illinois law, I respectfully dissent.

The majority properly recognizes that under Illinois law an insurer has a duty to give at least equal consideration to the insured's interest as to its own where the insured is a defendant in a suit in which the policy limits may be exceeded, Adduci v. Vigilant Insurance Co., Inc., 424 N.E.2d 645, 648 (1st Dist 1981), and that the duty is breached if the insurer due to negligence, fraud or bad faith, fails to settle resulting in an excess judgment. Id. Relying solely on Adduci and Phelan v. State Farm Mutual Automobile Insurance Co., 448 N.E.2d 579 (Ill. App. 1983), however, the majority upholds the dismissal of the complaint because the plaintiff failed to demonstrate why the settlement offer which the insurer rejected could not have been accepted at a later date when the insurer attempted to resurrect it. I do not believe that Adduci or Phelan imposes such a requirement in a case such as this one, and our application of it here could prove an insurmountable burden to insured persons in future cases.

A short discussion of Adduci and Phelan may clarify my concerns. In Adduci, the court recognized "as a general principle of law" that an insurer may breach its duty to the insured when it fails to respond to settlement overtures made by the party proceeding against the insured. 424 N.E.2d at 649. The Adduci court upheld the dismissal of the complaint, however, because the insured had failed to adequately plead such a failure to respond, and in fact pleaded facts demonstrating that the insured did respond to the claimant's settlement demand. Id. The settlement demand itself had provided that it would be withdrawn after 28 days, but anticipated the possibility of an extension based upon any reasonable ground during the time period. It is unclear whether it was actually withdrawn; the insured alleged only that it was withdrawn by its express terms. Although the insured responded after the claimant's self-imposed deadline, it was only 40 days after the time provided for a

response and merely 72 days after the offer was first made. Id. No facts indicated why the offer could not be accepted at that time, and therefore the court held that the blame for the failure of settlement could not be placed on the insured. Id.

In Phelan, the court construed Adduci narrowly as based solely on the pleading inadequacies. The Phelan court declared that

we do not view Adduci to stand for the proposition that as a matter of law, a settlement offer forty days after expiration of plaintiff's demand is insufficient to establish the bad faith of the insurer; rather, Adduci involved pleadings which allege insufficient facts to sustain a cause of action and, therefore, even if the allegations in the complaint were proved, plaintiff would not be able to recover.

448 N.E.2d at 584. Thus, Phelan did not interpret Adduci as establishing any sweeping, per se rule for the conduct of settlement negotiations. See also VanVleck v. Ohio Casualty Ins. Co., 471 N.E.2d 925, 961 (Ill. App. 1984) (setting forth elements as defined in Phelan). Adduci merely recognized that where a proposed settlement offer set a deadline that was extendable for any good reason within the self-imposed time period, and the insurer responded beyond that unilateral deadline but within 40 days of it (and within 72 days of the original offer), and no facts were pled indicating why the extra 40 days would impact the decision to settle on those terms, there was no basis to find that the insurer breached its duty to the insured. Id. at 583-84. Thus, the negligence asserted in Adduci was the failure to act more promptly, but the insurer responded appropriately with only a reasonably short delay. The Adduci holding would presumably prevent the scenario in which an unreasonably short deadline is imposed unilaterally in order to "set up" a future bad faith claim when the insurer is unable to respond in an expeditious manner. It is consistent with the law in other jurisdictions as well. See 14 Couch on Insurance sec. 206:28 (3d ed.) (whether an insurer's delayed response to an offer constitutes negligence or bad faith depends on the circumstances of the case) and cases cited therein.

In the present case, however, we are not faced with a failure to respond quickly enough to meet a unilateral deadline. Superior did respond timely to the offer in this case--by rejecting it outright without even informing its insured that the offer had been tendered./1 That, as they

say, is a horse of a different color. That act of rejecting a settlement offer that was beneficial to the insured (as evidenced by Superior's later attempt to turn back the clock) was itself a breach of duty.

In fact, an analogous sequence of events was deemed sufficient to support a jury verdict in Mid-America Bank & Trust Co. v. Commercial Union Insurance Co., 587 N.E.2d 81 (Ill. App. 1981). In Mid-America, a truck insured by Commercial Union hit a 13-year-old causing brain damage. The plaintiff's attorney sent a letter offering to settle for the policy limits of $50,000, but the offer was never accepted. Id. at 82. Almost three years later, the plaintiff again offered to settle for the policy limits. Commercial Union's attorney responded by instead offering $30,000, "'take it or leave it.'" Id. Offended by the response, the plaintiff withdrew all offers. A mere six days later, Commercial Union's attorney offered to pay the $50,0000, stating that he was always authorized to settle for that amount. The plaintiff refused the offer, and a jury awarded the plaintiff $911,536.50. Id. at 82-83. After receiving an assignment of claims from the truck owner, the plaintiff sued Commercial Union alleging negligence and bad faith in settling the original claim, and the jury ruled in the plaintiff's favor. Id.

On appeal, Commercial Union argued that the plaintiff failed to prove a cause of action because there was no change in circumstances that justified the plaintiff's refusal to accept the offer made six days later. Id. at 83-84. Although there was no evidence that the plaintiff could not have accepted the offer, the Mid-America court nevertheless affirmed. The court refused to focus solely on that six days, but instead looked at the totality of the circumstances. Specifically, the court noted that

Commercial Union was aware of the offer, the extent of the injury, the possible personal liability of the owner of the truck, and the risk of excess liability if the case were tried. For almost three years there was a clear opportunity to settle within the policy limits, but Commercial Union refused. We conclude that the circuit court properly denied the motion for directed verdict.

Id. at 84.

Mid-America thus rejected any rule that a plaintiff, in order to succeed on a negligence or bad faith settlement claim, must plead facts

demonstrating that a later settlement offer could not have been accepted. In Mid-America, it was assumed that the offer indeed could have been accepted, but that was not determinative of whether the insurer acted reasonably. Many of the factors supporting the jury verdict in Mid-America are present here as well: the insurer was aware of the offer; the extent of the injury was clear and the insurer had in fact requested and received medical records documenting the severity of the injury; the personal liability was evident given that it was a one-car accident and the insured was driving too fast and collided with a utility pole; and the risk of excess liability if the case were tried was unquestionable given that the accident rendered Meixell a quadriplegic (in fact, medical bills provided to the insurer had already exceeded the policy limits.) We do not have a three-year period in which settlement could have occurred, but the evidence in Mid-America did not include any rejection of offers during that time period, and the Mid-America plaintiff in fact proved willing to settle after that time. As in Mid-America, the insurer in this case was presented with an offer that fully protected the interests of the insured and limited the insured's damages to the limits of the policy. The insurer here rejected it and demanded a return of the check because Meixell refused to waive his right to bring claims against other parties whose interests were unrelated to the insured (namely, the township and county for the failure to maintain an adequate sign warning of the approaching "T"-intersection). Moreover, the rejection came only after a number of phone calls in which Meixell explained that the interests of the insured were fully protected and that the issue was only his ability to sue third parties. Taking all inferences in the light most favorable to the plaintiff, that complaint is sufficient to allege that Superior acted unreasonably and breached its duty to its insured.

Those principles identified in Mid-America are well-recognized in other Illinois decisions as well. LaRotunda v. Royal Globe Insurance Co., 408 N.E.2d 928, 935-36 (Ill. App. 1980), contains the oft-quoted test for negligence or bad faith settlement claims:

If an opportunity appears to settle within the policy limits, thereby protecting the insured from excess liability, the insurer must faithfully consider it, giving the insured's interests at least as much respect as its own. [citations omitted] The insurer need not submit to extortion; it may reject a bad deal without waiving the protection the policy limit gives it

against the vagaries of lawsuits. But if the honest and prudent course is to settle, the insurer must follow that route. If it deviates from that course, it will be liable for the whole judgment, so as to give the insured the protection that the policy was intended to provide. . . . If the insurer by its own fault converts such a case--one the insurer could have disposed of for a fair sum within the policy limits--into a case beyond the policy limits, the insurer cannot complain of the size of the judgment, a consequence of its own bad faith, fraud or negligence.

Superior deviated from that prudent course of settlement, and its actions can render it liable under Illinois law. See also Stevenson v. State Farm Fire & Casualty Co., 628 N.E.2d 810, 813 (Ill. App. 1993) (Illinois rule is that "an insurance company may be liable . . . where it has not taken advantage of opportunities to settle the matter upon reasonable terms"); 14 Couch on Insurance sec. 206:6 (3d ed.) (citing Illinois cases, states that a number of courts have held that there may be liability for negligence in rejecting a reasonable compromise offer). The imprudent rejection of the advantageous settlement offer, in this case of high potential liability and damages, is enough evidence of breach of a duty to survive a motion to dismiss.

In addition, Superior's failure to communicate the settlement offer to its insured was an independent breach of duty. In Rogers, M.D. v. Robson, Masters, Ryan, Brumund and Belom, 392 N.E.2d 1365, 1371 (Ill. App. 1979), the court held that an attorney retained by the insurer to defend the insured assumes all the duties imposed by the attorney-client relationship, including the duty to inform the insured of any settlement offers that affect him so that the insured may take proper steps to protect his own interests. That principle was affirmed by the Illinois Supreme Court on appeal. Rogers v. Robson, Masters, Ryan, Brumund and Belom, 407 N.E.2d 47, 49 (Ill. 1980). Superior failed to inform its insured of the settlement offer and thus deprived him of the opportunity to protect his own interests by accepting it. Therefore, on that independent basis the complaint adequately alleges a breach of duty sufficient to survive a motion to dismiss. See also Bailey v. Prudence Mutual Casualty Co., 429 F.2d 1388, 1390 (7th Cir. 1970) (failure to advise insured of settlement offers below policy limits might alone establish liability); see also 14 Couch on Insurance sec. 206:33 (3d ed.) ("Since an insurer is bound to communicate settlement offers to its insured, the

failure of an insurer to do so may render the insurer liable, unless such failure did not cause an excess verdict against the insured." (footnotes omitted)).

The damages from the failure to settle are apparent, a $3,137,791.28 verdict instead of a $20,000 settlement covered by insurance, and are not contested by the parties. The final element of proximate cause is also sufficiently pled. Superior devotes its brief to arguing that proximate cause is not met under the reasoning of Adduci and Phelan. Those cases, however, did not address proximate cause, analyzing only the element of breach of duty. In apparent recognition of that misuse of the cases, the majority discusses those cases in the context of breach of duty.

The Illinois Supreme Court recently defined the term "proximate cause" as encompassing two questions: "Was the defendant's negligence a material and substantial element in bringing about the injury, and, if so, was the injury of a type that a reasonable person would see as a likely result of his or her conduct?" First Springfield Bank & Trust v. Galman, 720 N.E.2d 1068, 1072 (Ill. 1999). That traditional definition has governed Illinois for "the better part of this century," id. at 1072-73, and is adequately pled here. A defendant's conduct is a substantial and material factor in the injury if, absent that conduct, the injury would not have occurred. Id. at 1072. That is established here because if Superior had accepted rather than rejected the offer, or informed the insured and allowed him to do so, the jury award in excess of the policy limits would not have occurred. In addition, given the massive injuries to Meixell and the high likelihood of individual liability, the potential for the jury award above the policy limits was apparent if a settlement was not obtained. Moreover, we cannot hold as a matter of law that it was unforeseeable that Meixell would later decide not to settle a multi-million dollar claim for $20,000. Under those circumstances, Meixell adequately pled facts to support his claim that the negligent rejection of the settlement offer proximately caused the injury.

I note briefly that Superior's attempt to graft the Adduci analysis into the proximate cause context would render the analysis unrecognizable. Under Superior's approach, Meixell would have to demonstrate that the injury could not have been avoided by the actions of another party, namely the acceptance of a subsequent settlement offer.

Rather than focus on whether an insurer's actions caused the injury, Superior would have us ask whether a third party could have taken action that would have prevented the injury. Superior makes no effort to ground its argument in the traditional definition of proximate cause, and it is in fact unsupported in Illinois law.

Finally, I am concerned about the implication of this decision on future litigants. In this case, the insured assigned his right to sue for bad faith to Meixell, and thus the party that rejected the insurer's later offer was the one bringing this lawsuit. The assignee, however, stands in the same position as the assignor with respect to the claim. Thus, the principles set forth in this opinion apply equally to an action brought by the insured herself. Where the insured does not assign her rights, the holding today puts her in the unenviable position of proving why a person not a party to the action could not have acted differently and accepted a later offer. That adds an element not heretofore seen in Illinois cases. It may be an appropriate question in those few cases in which the issue is whether a short delay in responding should be considered negligence, because the surrounding circumstances may affect the reasonableness of the delay. Where, however, an affirmative act by the insurer is unreasonable on its face, I find no support for the addition of an extra element to the cause of action, and many cases imply that no such element exists. If Illinois indeed intended such a sea change in the law, I would expect it to be set forth explicitly. I therefore would allow this case to proceed at least beyond this initial stage of the proceedings. Accordingly, I respectfully dissent.

/1 Superior had offered to settle for the policy limits and a general release, and it refused to accept Meixell's offer of a covenant not to sue rather than a general release that would have included third parties. This is not a case in which an insurer made another counteroffer as part of an ongoing effort at negotiation. Superior rejected Meixell's offer of the policy limits and the covenant not to sue, and instructed Meixell to return the settlement draft if it did not agree to Superior's condition of a general release. That "take it or leave it" rejection of Meixell's offer did not leave open further avenues of settlement, and effectively terminated the negotiations. At least that is what we must assume taking all inferences in Meixell's favor. Superior does not argue on appeal that its insistence on the general release was reasonable or necessary to protect the

interest of its insured.